UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> NOKIA SOLUTIONS AND NETWORKS OY, <br><br> Defendant. | C.A. No. 1:19-cv-12251-ADB |

**COLLISION COMMUNICATIONS OPPOSITION TO NOKIA SOLUTIONS AND
NETWORKS OY'S MOTION TO STAY AND DISMISS**

### i. Introduction

Plaintiff Collision Communications, Inc. ("Collision") hereby respectfully opposes Nokia

Solutions and Networks OY's ("Nokia") Motion to Stay or Dismiss. (Docket #18). The

litigation Nokia filed in Delaware (the "Delaware Action") is a declaratory judgment action that

Nokia filed to cause overwhelming hardship and expense to Collision, which is the natural

plaintiff in the parties' business dispute. Indeed, the parties' dispute has no meaningful

connection whatsoever to Delaware and instead, Nokia's actionable misconduct consists

primarily of misrepresentations which it relayed to Collision's Massachusetts-based Chief

Operating Officer ("COO"), Jared Fry, while he was running the company's operations from

Boston. See generally Affidavit of Jared Fry, filed herewith. Accordingly, Nokia's motion should

be denied in its entirety.

By way of summary, Nokia filed the Delaware Action solely to gain a procedural

advantage over Collision. Specifically, Nokia filed its complaint in the Delaware Action at 4:58

p.m. on October 30, 2019, two minutes before Nokia's counsel sent Collision's counsel written

notice unilaterally declaring that Nokia was ending the parties' mediation process and the parties' corresponding standstill agreement. Indeed, Nokia did not alert Collision to the filing of the Delaware Action until its complaint was served on Collision's registered agent on November 7, 2019. In the meantime, on November 1, 2019, Collision filed its comprehensive Complaint in this action.

Both the Delaware Action and this action are in the early stages of litigation. Based on Delaware's lack of ties to this litigation, Collision has filed a motion to dismiss or stay in the Delaware Action, which is currently under review. The Delaware Court, however, has already issued a stay of discovery in that litigation. See **Exhibit 1**, attached hereto. Therefore, since Nokia filed the Delaware Action solely to win the "race to the courthouse," it is proper for this Court to proceed with the instant litigation.

### ii. Relevant Procedural Background

On July 18, 2019, Collision sent a demand letter to Nokia based on Nokia's breach of contract, misrepresentations and consumer protection violations. See Demand Letter, attached as **Exhibit 2**.[1] At the conclusion of this letter, Collision offered that it was open to mediating the parties' dispute. See id. In response, given the Massachusetts-based nature of Collision's claims, Nokia retained litigators from the Boston office of McCarter & English. Through McCarter & English, Nokia ultimately agreed to proceed to mediation provided that Collision first agreed to a standstill agreement. See August 20, 2019 Email (with Standstill Agreement attached), attached as **Exhibit 3**. Under a material term of the standstill agreement, the parties agreed not to file any lawsuit while settlement discussions were ongoing. See id. The parties further agreed that the

---

[1] The factual bases of Collision's claims against Nokia are detailed in Collision's opposition to Nokia's Motion to Dismiss, and for the sake of efficiency, Collision will not repeat those facts here.

standstill agreement would terminate immediately after the unsuccessful conclusion of the parties' mediation. See id.

With the standstill agreement in place, and following discussions concerning the selection of a mediator and other logistical considerations, the parties agreed to hold a one-day mediation in New York City on October 24, 2019. Although the in-person mediation did not result in a settlement, the parties agreed that the mediation remained ongoing and that they would continue their settlement negotiations via telephone back in Boston, Massachusetts with the assistance of the mediator.

Despite this agreement, Nokia filed its complaint in the Delaware Action at 4:58 p.m. on October 30, 2019. Precisely at 5:00 p.m. that same day, after Nokia had filed its complaint in that case, Nokia's Boston-based counsel sent an email to Collision's counsel (who understood that settlement discussions were continuing), declaring that the mediation was abruptly terminated. See October 30, 2019 Email, attached as **Exhibit 4**. Collision filed this action on November 1, 2019. See Docket #1.

This litigation has no ties to Delaware. Collision is incorporated in Delaware, but otherwise has no connection to the state. Collision has no office or employees in Delaware and has never done business there. Nokia is based in Finland. The statements and representations about which Collision is complaining, and which form the basis of Collision's claims, were all relayed to Collision in Massachusetts, not Delaware. All of Collision's witnesses and documents are located in Boston or in Southern New Hampshire, within the Greater Boston area.

### iii. **Argument**

Nokia argues that because it filed the Delaware Action first, the court in Delaware should decide the appropriate forum for this case. Given the irrefutable facts present here, in which

3

Nokia feigned continued interest in settlement discussions while separately finalizing its anticipatory complaint for the sole purpose of winning the "race to the courthouse," the Court should not grant Nokia's Delaware action first-filed status. Instead, Nokia's unseemly tactics here are precisely the type of cynical maneuvering that courts in this circuit have rightly discouraged.

Indeed, courts have held again and again that where a party files an action solely to win the race to the courthouse, that action is not given the deference of the first-filed rule. See, e.g., Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 16 (D. Mass. 2002) (holding that "[o]ne special circumstance which nullifies the presumption in favor of the first-filed action is the filing of a suit for the sole purpose of winning the race to the courthouse to secure a preferred forum"); J. P. Sercel Assocs., Inc. v. New Wave Research, No. CIV. 03-331-JD, 2003 WL 22299014, at *2 (D.N.H. Oct. 7, 2003) (recognizing that "the first-filed action rule will not apply if the circumstances of the first suit suggest bad faith or if the convenience of the parties favors a different forum). This is particularly true where a party has feigned interest in negotiating a settlement while preparing to file its own lawsuit. See, e.g., Veryfine Prod., Inc. v. Phlo Corp., 124 F. Supp. 2d 16, 22 (D. Mass. 2000) (holding that the first-filed lawsuit is not given deference where "a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation; or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day[,]" and that "in cases such as this the circumstances demonstrate that the winner of the race to the courthouse should not enjoy the presumption of preferable venue"); Davox Corp. v. Digital Sys. Int'l, Inc., 846 F. Supp. 144, 148 (D. Mass. 1993) (refusing to hear first-filed declaratory judgment action because plaintiff brought claim after misrepresenting its intent to negotiate with defendant, and holding that "[t]his

court will not exercise its discretionary jurisdiction over this action because it would be inappropriate to reward—and indeed abet—conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources"). Such first-filed cases are even more suspect when they assert claims for declaratory relief and the later-filed lawsuit addresses the true underlying claim. See Veryfine Prod., Inc., 124 F. Supp. 2d at 22 (holding that where the first filed lawsuit is for declaratory relief and the later lawsuit asserts substantive claims, "circumstances demonstrate that the winner of the race to the courthouse should not enjoy the presumption of preferable venue.").

Here, Nokia's courthouse racing maneuvers are plainly evident and are precisely the type of tactics that this Court should decline to reward. Specifically, despite an entire day of mediation in New York and ongoing settlement communications, Nokia refused to make any additional settlement offers beyond the single settlement offer which it made at the outset of the parties' mediation. Nokia, however, claimed to continue to be interested in mediation, so discussions continued after the parties' counsel had returned to Boston. Then, late in the afternoon on October 30, 2019, Nokia's lead Boston litigation attorney called Collision's counsel, putatively to discuss the mediation. Approximately an hour later, and only moments before 5 p.m., Nokia's lead counsel called Collision's counsel back to say that Nokia refused to make any further settlement offers or engage in further settlement discussions and that Nokia now considered the mediation terminated. See Exhibit 4 (email from Nokia's Boston-based counsel). Nokia's counsel confirmed this communication in an email dated October 30, 2019. See id. The email closely tracks the language of the standstill agreement to signal that the standstill agreement was terminated.

Two minutes prior to Nokia sending written notice that mediation was over and the standstill agreement terminated, Nokia had filed its complaint in the Delaware Action. Nokia never disclosed, in either telephone calls or emails, that it had already filed its complaint. Nokia evidently was preparing its complaint while feigning to have a continued interest in settlement negotiations with Collision. When Nokia deemed its complaint ready to be filed (and in fact filed the complaint), Nokia then abruptly terminated "negotiations." In an obvious effort to ensure that it arrived at the courthouse first, Nokia filed its complaint moments before sending written notice that mediation was over. Nokia's counsel never informed Collision that it filed suit or provided a courtesy copy of its complaint. As a result, when Collision filed this action, it was unaware that Nokia had already filed in Delaware.

Nokia, of course, was on notice for months that Collision intended to file suit in Massachusetts. Collision hired a Boston-based attorney to send a demand letter under Massachusetts law. See Exhibit 2, hereto. Nokia hired a Boston-based attorney to defend it. The only reason that Collision did not file suit first is because Nokia led Collision to believe that settlement discussions were still ongoing. If Nokia genuinely believe that this Court had no jurisdiction and that Collision's claims were subject to immediate dismissal under Fed. R. Civ. P. 12(b)(6), there would have been no reason for Nokia to file an anticipatory declaratory judgment action. Nokia apparently filed in Delaware solely as a litigation tactic.

Under such clear and indisputable circumstances, this Court should decline to advantage Nokia in any way for filing in Delaware slightly more than a day before Collision (the natural plaintiff here) filed this action. Therefore, the Court should give no weight or deference to the fact that Nokia technically filed the Delaware Action first and instead, should allow this action to proceed without delay.

### iv. **Conclusion**

For the foregoing reasons, Collision Communications respectfully requests that Nokia's

motion to stay and dismiss be denied in its entirety. Collision requests oral argument on Nokia's

Motion.

Respectfully submitted,

COLLISION COMMUNICATIONS,


*/s/ Tyler Chapman*
Tyler E. Chapman (BBO # 637852)
tchapman@toddweld.com
Maria Davis (BBO # 675447)
mdavis@toddweld.com
Tara D. Dunn (BBO # 699329)
tdunn@toddweld.com
Todd & Weld LLP
One Federal Street
Boston, MA 02110
Tel: 617 720 2626

Dated: February 21, 2020


### **CERTIFICATE OF SERVICE**

I, Tyler E. Chapman, hereby certify that this document has been filed through the ECF
system and will be sent electronically to the registered participants as identified on the Notice of
Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered
participants on February 21, 2020.

*/s/ Tyler E. Chapman*
Tyler E. Chapman