UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NOKIA SOLUTIONS AND NETWORKS OY,<br><br>Defendant. | C.A. No. 19-CV-12251-ADB<br><br>**LEAVE TO FILE GRANTED<br>ON MARCH 5, 2020 (DKT. 31)** |

## DEFENDANT NOKIA SOLUTIONS AND NETWORKS OY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Nokia Solutions and Networks Oy ("Nokia") submits this Reply in further support of its Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. 12).

## INTRODUCTION

Plaintiff Collision Communications, Inc.'s ("Collision") Opposition (Dkt. 28) to Nokia's Motion to Dismiss fails to establish any basis for the exercise of personal jurisdiction over Nokia in Massachusetts. Collision seeks to establish jurisdiction over Nokia based on the fortuitous happenstance that one of the people negotiating a contract with Nokia, Jared Fry, apparently spoke to Nokia and checked and sent emails from his home in Boston. *See* Affidavit of Jared Fry (Dkt. 29).[1] Such unilateral activity on the part of one of Collision's agents, however, cannot act as a basis for establishing Nokia's "purposeful availment" of Massachusetts law. This is especially true here where it is undisputed that: (1) Collision is a New Hampshire company that is not registered to do business in Massachusetts; (2) Nokia is a Finnish company without any

---

[1]  Paragraph 37 of the Complaint alleges, "During this phase and subsequent phases of the parties' dealings, Collision was represented by Jared Fry and Stan Fry while Nokia was represented by Francisco 'Paco' Lopez Herrerias." *Id.* Collision does not dispute that Stan Fry lives and works in New Hampshire.

contacts in Massachusetts;[2] (3) Nokia was negotiating a possible technology agreement with Collision which entailed Collision's engineers performing work in New Hampshire; (4) the parties' face-to-face meetings took place in New Hampshire; (5) payments and notices due under the alleged contract were to be made in New Hampshire; and (6) Collision, to the extent it suffered any injury, suffered that injury in New Hampshire. In fact, no aspect of the alleged contract being considered, whether by way of performance or otherwise, had anything to do with Massachusetts whatsoever. Based on these facts, the location of where one of Collision's agents chose to open emails or take phone calls cannot act as the basis for establishing jurisdiction over Nokia in Massachusetts. The Court, therefore, should dismiss this action for lack of personal jurisdiction.

## ARGUMENT

### I. COLLISION'S EVIDENCE IS INSUFFICIENT TO MEET THE MASSACHUSETTS LONG-ARM STATUTE

As Collision admits, it must meet both the Massachusetts long-arm statute (G.L. c. 223A, § 3) and the Due Process Clause of the United States Constitution in order to establish personal jurisdiction over Nokia in Massachusetts. To meet the Massachusetts statutory long-arm requirement, Collision relies on G.L. c. 223A, § 3(a) ("transacting any business in this commonwealth") or § 3(c) ("causing tortious injury by an act or omission in this

---

[2] Collision's Opposition argues that "Nokia's website states that one of its worldwide offices is located in in [*sic*] Westford, Massachusetts." Opposition at 4. Later, however, the Opposition notes that this is not an office belonging to Nokia Solutions and Networks Oy. *See id.* at 18 ("Its US subsidiary has a major research facility here."). As noted in the Declaration of Ulla Nyberg (Dkt. 14), Nokia Solutions and Networks Oy (the party to this lawsuit) is a Finnish company that does not have any offices in Massachusetts. *See id.*, ¶ 4. That a non-party affiliate of the defendant may have an office in Massachusetts is irrelevant to the personal jurisdiction analysis. *See*, *e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 134-35 (2014) (Due Process did not permit exercise of general jurisdiction over German corporation in California based on services performed there by its United States subsidiary). That is particularly the case here where Collision alleges only specific jurisdiction, as specific jurisdiction focuses solely on forum contacts which relate to the claims asserted. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 60–61 (1st Cir. 2005). Collision does not claim to have had any dealings this Westford office.

commonwealth") as the basis for jurisdiction. Collision's arguments, however, are misguided as Nokia's alleged contacts with Massachusetts are plainly insufficient to meet the long-arm statute.

To establish jurisdiction pursuant to Section 3(a), courts look to whether the defendant attempted to participate in the *Commonwealth's economic life*. *See*, *e.g.*, *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992). Nokia cannot be said to have attempted to participate in the Massachusetts economy. The facts demonstrate that Nokia, a Finnish company, negotiated with Collision, a New Hampshire company, for a potential technology partnership to be performed by Collision in New Hampshire, without any connection to Massachusetts whatsoever.

More specifically, performance by Collision's developers under the potential contract was to occur exclusively in New Hampshire. All of the alleged detrimental reliance work by Collision's developers during contract negotiations occurred in New Hampshire. In its Amended Complaint, Collision admits that meetings between Collision and Nokia concerning the alleged contract took place in New Hampshire at Collision's corporate offices. *See*, *e.g.*, Complaint, ¶ 28 ("in early-February, 2017, representatives from Nokia came to Collision's offices for a three-day workshop"); *see also* 2/14/17 Email from Fry (Declaration of David Himelfarb ("Himelfarb Decl.") (Dkt. No. 15), at Ex. 1) ("Thank you again for visiting us in New Hampshire …."). The Complaint further alleges that, after the February 2017 workshop in New Hampshire, Nokia representatives returned to New Hampshire to attempt to negotiate a business arrangement. *See* Complaint, ¶ 54; *see also* 5-19-17 Email from Fry (Himelfarb Decl., at Ex. 2) ("I wanted to thank you again for making the trip to New Hampshire.").

The draft contracts that Collision relies on and that Collision drafted at the time all involved performance and acts in New Hampshire, with no Massachusetts activity. The draft

contracts expressly provide that they are between "Collision Communications Inc., a Delaware corporation having its principal place of business at 12 Murphy Drive, Suite G-2, Nashua, NH, 03062, U.S.A." and "Nokia Solutions and Networks Oy, a corporation validly organized and existing under the laws of Finland, having its principal place of business ... [in] Espoo, Finland." *See* Integration Ag., p. 1; License Ag., p. 1 (Himelfarb Decl., at Ex. 3-4). Both Agreements contemplated that payments would be made to Collision's TD Bank account in New Hampshire. *See* Integration Ag., Sect. 5.4; License Ag., Sect. 3.4. Likewise, all notices under the agreements were to be sent to Collision's offices "C/O: Jared Fry" in New Hampshire. *See* Integration Ag., Sect. 11.9; License Ag., Sect. 11.8. There is nothing in these draft agreements that involves Massachusetts.[3]

In short, nothing about the parties' dealings suggest that Nokia intended to participate in Massachusetts' economic life. "The long-arm statute does not confer personal jurisdiction where the nonresident's contacts with Massachusetts were 'purely incidental' to the business transactions." *Aub v. Technicolor Entm't Servs.*, 224 F. Supp. 2d 371, 373-374 (D. Mass. 2002) ("The fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that [Defendant] transacted business in Massachusetts."). The *Aub* court further noted that the "Massachusetts Supreme Judicial Court ('SJC') has distinguished cases in which a nonresident's contacts are 'random or isolated events' from cases in which the contacts are 'part of a larger systematic effort on [the nonresident's] part to obtain business from Massachusetts businesses and residents.'" *Id*. at 373 (*citing Tatro v. Manor Care, Inc.*, 416 Mass. 763 (1994)). Collision has not established any facts which

---

[3] Nokia also notes that the parties' prior Proof of Concept agreement that Collision performed and Nokia paid Collision for was performed in New Hampshire, also without concern to Massachusetts. *See* Complaint, ¶ 25-26.

4

ME1 32792070v.2

demonstrate a sufficient transacting of business in this Commonwealth by Nokia. The transaction here was fundamentally one involving a New Hampshire company with performance under the potential contract in New Hampshire. The contract and negotiations had nothing to do with Massachusetts. Jared Fry's unilateral decision to work out of his home office for his New Hampshire employer are mere incidental contacts to the material business transaction and claims at issue. Nokia's alleged contacts with Mr. Fry during his work from home, standing alone, do not demonstrate any deliberate choice *by Nokia* to participate in the economic life of Massachusetts.[4]

Next, Collision attempts to rely on Section 3(c) to somehow meet the Massachusetts' long-arm statute. Once again, Collision is misguided because the alleged Massachusetts contacts of Nokia do not tend to show causation of any tort *in Massachusetts*. Collision notes in its Opposition that the standard under Section 3(c) is largely as follows: "*where a defendant knowingly sends into a state* a false statement, intending that it should there be relied upon *to the injury of a resident of that state*, he has, for jurisdictional purposes, *acted within that state*." *See* Opposition, at p. 14 (*citing Burtner v. Burnham*, 13 Mass. App. Ct. 158, 164-64 (1982)) (emphasis added). Putting aside the question of whether Nokia knowingly sent any sufficient statements into Massachusetts merely by sending emails to Collision located in New Hampshire that were opened by its agent in Massachusetts, the articulated standard demonstrates expressly how Collision continually misses the point.

The plaintiff in this action is not Jared Fry, it is Collision, a company located in New Hampshire. *No injury to a resident of Massachusetts has occurred here*. At best, the Complaint alleges that an injury occurred to a New Hampshire company in New Hampshire. The location

---

[4] Nokia's lack of minimum contacts with Massachusetts are further discussed below in the constitutional purposeful availment analysis.

ME1 32792070v.2

of where Jared Fry worked at various times is not relevant to the jurisdictional analysis under Section 3(c) of the long-arm statute. Simply put, Nokia has not acted within Massachusetts or caused any injury to a Massachusetts resident. Given these essential facts, Collision cannot satisfy the Massachusetts long-arm statute under either Section 3(a) or 3(c).

**II.  NOKIA DID NOT PURPOSEFULLY AVAIL ITSELF OF MASSACHUSETTS IN ANY WAY**

Beyond the Massachusetts long-arm statute, Collision has also not established Nokia's purposeful availment of Massachusetts in order to meet constitutional requirements. Again, Collision's basis for Nokia's alleged purposeful availment rests solely with the unilateral acts of Collision's Chief Operating Officer, Jared Fry, choosing to work from his home office in Massachusetts at times, and his opening of email[5] and taking telephone calls from Massachusetts. None of those alleged acts constitute *Nokia's* purposeful availment of the privilege of conducting activities in Massachusetts, thereby invoking the benefits and protections of the state's laws and making the defendant's involuntary presence before the state's courts foreseeable.

"A purpose of the foreseeability requirement is that 'personal jurisdiction over nonresidents ... is a quid for a quo that consists of the state's extending protection or other services to the nonresident.'" *See Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 29 (1st Cir. 2008). Like in *Phillips*, there is no evidence here that Nokia availed itself of any protections of Massachusetts law or other services provided by the State.[6] All that Collision argues here is that Nokia allegedly knew that Jared Fry worked from his home office in Massachusetts at various

---

[5]  Collision does not dispute that its servers are located in New Hampshire, meaning that Nokia's emails went first to New Hampshire and then were forwarded from New Hampshire to Jared Fry in Massachusetts by Collision.

[6]  As noted above, Collision's reliance on a Nokia affiliate having an office in Westford, Massachusetts, is not a relevant contact for purposes of specific jurisdiction because it has nothing to do with the allegations in this case. *See supra* n. 2.

6

ME1 32792070v.2

times during the parties' negotiations.[7]  This, as a matter of law, is insufficient to establish purposeful availment by Nokia for purposes of personal jurisdiction involving claims not made by Jared Fry individually, but by a New Hampshire company.  Collision ignores that all of the essential aspects of the parties' relationship had to do with potentially transacting business in New Hampshire and nothing to do with Massachusetts.

"While it is true that mail or telephone communications sent by a defendant may be used to establish minimum contacts, generally without more, they will be insufficient to establish personal jurisdiction."  *Walburn v. Rovema Packaging Machines, L.P.*, No. CIV.A. 07-3692(PGS), 2008 WL 852443, at *6 (D.N.J. Mar. 28, 2008).  Case law has established that "*in the absence of a contract that is substantially connected to this state ...* telephone calls and faxes to the state during negotiations do not create specific personal jurisdiction."  *Alacrity Renovation Servs., LLC v. Long*, No. 316CV00206FDWDSC, 2016 WL 4150011, at *6 (W.D.N.C. Aug. 3, 2016) (emphasis added) (citing cases).  *See also* cases cited by Nokia in its Motion to Dismiss (Dkt. No. 13), at pp. 13-14.  The alleged Massachusetts contacts here, even if accepted as true, are simply too attenuated and incidental to justify the exercise of jurisdiction over Nokia.  What is utterly lacking is any alleged contact that is actually *substantially connected to Massachusetts in some fashion*.[8]

---

[7]  Nokia could not have known when Jared was choosing to work from home or from Collision's offices in New Hampshire.  Jared's unilateral choices were his alone and not something directed by Nokia in any way.  In fact, the parties' communications often included several persons from each company, with all of Collision's other representatives working from its offices in New Hampshire and performing all of the alleged essential development work from that location.

[8]  While Nokia does not dispute that, in the appropriate case, the contacts themselves need not necessarily be substantial to permit the exercise of jurisdiction, Collision's citation to cases with instances of more limited contacts ignores the important, and necessary, context that ensures that those limited contacts are actually tied to the claims at issue and the non-resident defendant's voluntary and foreseeable purposeful availment of that forum.  Nokia's alleged contacts with Massachusetts here lack the supporting context necessary to establish jurisdiction.

ME1 32792070v.2

This is especially true where the contacts are solely that of the Plaintiff's agent in choosing to work from home in Massachusetts, and not the deliberate, voluntary acts of Nokia reaching into Massachusetts for purposes of doing business.[9] "The focus of the purposeful availment inquiry is *the defendant's intentionality*." *Gargano v. Cayman Nat. Corp.*, No. CIV.A.09-11938-JLT, 2010 WL 2245034, at *5 (D. Mass. June 2, 2010) (emphasis added). In evaluating communications for purposes of personal jurisdiction, the *Gargano* Court noted:

> This court cannot reasonably construe an email that could have been read from any computer anywhere in the world, but which the Plaintiff just happened to read in Massachusetts, as an intentional action by which Defendants availed themselves of the privileges of doing business in Massachusetts. Defendants did not direct their conduct toward Massachusetts. Rather, they sent an email to a stateless email account and Plaintiff, at his convenience, read that email from a computer located in Massachusetts. Indeed, this is not purposeful availment, but precisely the kind of "random, isolated, or fortuitous" contact with the forum state that the Supreme Court has said cannot constitute a basis for jurisdiction.

*Id*.[10] What is necessary, yet wholly lacking here, is "deliberate targeting of the forum" by Nokia. *See Connell v. CIMC Intermodal Equip.*, No. 1:16-CV-714, 2016 WL 7034407, at *3 (M.D. Pa. Dec. 2, 2016) (plaintiff's claim of home office as basis for jurisdiction insufficient as "[d]eliberate targeting of the forum is necessary; unilateral communication by the party seeking to impose jurisdiction on a nonresident defendant will not suffice.").

---

[9] Collision repeatedly conflates Jared Fry, individually, with Collision, the company. The mere fact that Nokia purportedly knew that Jared Fry worked from his home office in Massachusetts is not dispositive of the jurisdictional issue. *See Phillips*, 530 F. 3d. 22, 28 (2008) ("We have held, however, in a variety of contexts, that the defendant's awareness of the location of plaintiff is not, on its own, enough to create personal jurisdiction over a defendant.").

[10] The fundamental flaw of Collision's position is seen by the far-ranging ramifications of somehow holding that a non-resident defendant could be subject to jurisdiction simply because an agent of the plaintiff chooses to work from home in a different state. If someone sends an email to a business address when that business is located in a specific state (like New Hampshire) and an agent of the business then decides to open and respond to the email in another state, it cannot mean that jurisdiction attaches. This is true regardless of the defendant's purported knowledge. Such contacts are merely incidental to the actual business relationship and too "random, fortuitous or attenuated" to establish jurisdiction.

In evaluating the parties' relationship, it cannot be said that Nokia could have had any fair warning that it might be sued in Massachusetts merely because one of Collision's employees worked out of his home office in Massachusetts during part of the negotiations.[11] After all, Collision: (1) is a company that is registered to do business in New Hampshire (*See* NH Sect'y of State Printout and Annual Report) (attached hereto as Exhibits A and B); (2) lists 12 Murphy Drive, Unit G-2, Nashua, NH 03062 as its address on its webpage (*see* Exhibit C) (and does not list any Massachusetts offices); and (3) lists a New Hampshire address as its home office on its SEC filings[12] (*see* Exhibit D). Moreover, Nokia's contacts with Jared Fry, whether he was in New Hampshire, in his home in Massachusetts, or anywhere else, were all for purposes of working with Collision for a potential contract to be performed out of Collision's offices in New Hampshire.[13] Incidental contacts with Jared Fry that may have occurred in Massachusetts do not mean that Nokia was "deliberately targeting" Massachusetts. Nor can Collision somehow claim that it suffered injury in Massachusetts merely because one of its employees lives there. The effects of Nokia's alleged misrepresentations and communications were not felt in Massachusetts, but instead felt by Collision in New Hampshire.

The requirement of deliberate targeting of the forum "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp v. Ruszewicz*, 471 U.S. 462, 475 (1985). Collision's failure to sufficiently articulate any legitimate connection between

---

[11] To establish jurisdiction, Collision must establish both voluntariness and foreseeability. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994) (the necessary "cornerstones" of purposeful availment).

[12] The attached SEC Form D lists Jared Fry's address as "c/o Collision Communications, Inc., 20 Depot Street, Suite 2A, Peterborough, NH 03458."

[13] Nokia disputes that it knew that Jared Fry was "running" the operations of Collision in New Hampshire from his home office in Boston. The truth of such averment, however, is irrelevant to the question of whether jurisdiction exists over Nokia here.

ME1 32792070v.2

Nokia, on one hand, and Massachusetts, on the other, necessitates the dismissal of the claims against it, in accordance with Fed. R. Civ. P. 12(b)(2).

In its Opposition, Collision relies in part on *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1 (1979), to argue that Nokia could have expected being haled into Court in Massachusetts. The facts of *Good Hope Indus.*, however, are readily distinguishable. As the SJC observed in that case, "inquiries into whether the exercise of personal jurisdiction is permissible in a particular case are sensitive to the facts of each case." *Id.* at 1 (citation and internal quotation marks omitted). In *Good Hope Indus.*, the SJC relied heavily on the facts that the plaintiffs were Massachusetts corporations with their main offices in Springfield, MA, their principal bank account where money was sent from was in Springfield, multiple deliverables were sent to Massachusetts, and invoices were sent to Massachusetts. *See id.* at 3-4. Ultimately, the court observed, "[h]ad the defendant not desired to expose itself to a claim of Massachusetts jurisdiction, it was within its power to refuse to deal with the plaintiffs here." *Id.* at 12. In this case, in contrast, Nokia was contemplating doing business with a New Hampshire company, Collision's draft agreements contemplated payments to a New Hampshire bank account and required that notices under the contract be sent to New Hampshire, and Collision's work under the proposed collaboration was to be performed in New Hampshire. The pertinent facts from *Good Hope* are simply absent here.

Lastly, Collision argues that the *forum non conveniens* factors favor Massachusetts over Delaware because Boston is barely an hour from New Hampshire. *See* Opposition at 18. It cites no cases supporting the proposition that jurisdiction is proper in one state because the state is close to another state where jurisdiction may lie. In fact, such an argument turns applicable Supreme Court precedents on their head. Nokia also disputes that Massachusetts is a more

convenient forum. As the Court well knows, in contract based disputes, such as this one, where discovery is largely electronic, there is no real difference between litigating in Massachusetts versus Delaware. *See Veryfine Prod., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000) ("Because this is primarily a contract claim, the documents appear to be in the possession of both parties and thus the relative convenience of an alternative forum is negligible."). Moreover, as Nokia's witnesses are in Finland and Germany, Massachusetts is not a convenient forum for them. It is also generally the case that travelling between cities in the Northeast is not burdensome. Indeed, Collision has already shown a willingness to travel when it suits its needs, such as its trips to Finland to negotiate with Nokia and its willingness to travel to New York for a mediation. Finally, Collision's Massachusetts counsel is already admitted *pro hac vice* in Delaware and both Collision and Nokia have retained Delaware counsel. Looking at the situation as a whole, Collision has not shown that Massachusetts is a more convenient forum than Delaware.

## CONCLUSION

For the foregoing reasons, Nokia respectfully requests that the Court grant its Motion to Dismiss and dismiss Collision's Amended Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Nokia further requests such other and further relief as the Court deems just and proper.

Respectfully submitted,

NOKIA SOLUTIONS AND NETWORKS OY,

By its attorneys,

/s/ David Himelfarb
David Himelfarb, BBO #649596
dhimelfarb@mccarter.com
John Allen, BBO # 673081

11

jallen@mccarter.com
McCarter English, LLP
265 Franklin Street
Boston, MA  02110
Tel:  (617) 449-6500
Fax: (617) 607-9200

March 9, 2020

## CERTIFICATE OF SERVICE

I, David Himelfarb, hereby certify that on this 9th day of March, 2020, a true copy of the above document was served on counsel for all parties through the Court's ECF/CM system.

/s/ David Himelfarb
David Himelfarb

12

ME1 32792070v.2