UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| COLLISION COMMUNICATIONS, INC., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 19-cv-12251-ADB |
| | * | |
| NOKIA SOLUTIONS AND NEWORKS OY, | * | |
| | * | |
| Defendant. | * | |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO DISMISS

BURROUGHS, D.J.

Plaintiff Collision Communications, Inc. ("Plaintiff") brings this action against Nokia Solutions and Networks Oy ("Defendant"), alleging breach of an agreement for Plaintiff to perform work to integrate its technology with Defendant's and for Plaintiff to grant Defendant a license to use Plaintiff's technology. [ECF No. 6 ¶¶ 2–3 ("Am. Compl.")]. Plaintiff asserts breach of contract, breach of the covenant of good faith and fair dealing, detrimental reliance, negligent and intentional misrepresentation, quantum meruit, and a violation of Massachusetts General Laws Chapter 93A. [Id. ¶¶ 84–109].

Currently before the Court are Defendant's motions to dismiss for lack of personal jurisdiction, [ECF No. 12], and to dismiss for failure to state a claim, [ECF No. 16]. For the reasons set forth below, Defendant's motion to dismiss for lack of personal jurisdiction, [ECF No. 12], is GRANTED in part and DENIED in part, and Defendant's motion to dismiss for failure to state a claim, [ECF No. 16], is DENIED with leave to renew.

## I.      BACKGROUND

### A.      Factual Background

The following facts are taken from the amended complaint, [Am. Compl.], the factual allegations of which are assumed to be true when considering a motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  In addition, in assessing whether personal jurisdiction exists, the Court may consider "the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

Plaintiff is a Delaware corporation with its principal place of business in Peterborough, New Hampshire.  [Am. Compl. ¶ 11].  It is a technology company focused on creating software that runs on cellular basestations which are owned by original equipment manufacturers ("OEMs").  [Id. ¶ 19].  The software Plaintiff creates is unique and proprietary as it is designed to integrated into an OEM's cellular basestation.  [Id. ¶¶ 19–21].  Defendant is a Finnish corporation with its principal place of business in Espoo, Finland.  [Id. ¶ 12].

In 2015, Defendant asked Plaintiff to conduct testing in order to analyze Plaintiff's technology and determine whether it could be integrated with Defendant's.  [Am. Compl. ¶ 22]. Based on Plaintiff's performance during this period, Defendant initially considered acquiring Plaintiff, but later asked Plaintiff to further demonstrate its technology through a "proof of concept" ("PoC") project.  [Id. ¶¶ 24–25].  The parties agreed, in writing, that Defendant would pay Plaintiff $600,000.00 for the PoC project.  [Id. ¶ 26].

In early 2017, the parties met in New Hampshire to discuss the results of the PoC project and ways to commercialize Plaintiff's technology with Defendant's hardware.  [Am. Compl.

¶ 28].  During that meeting, Defendant expressed enthusiasm about the PoC results and the parties made plans to continue working together.  [Id. ¶¶ 29–30].  Those plans detailed additional work to be completed in multiple phases, with milestones throughout 2017 to line up with Defendant's planned release schedule and a demonstration of Plaintiff's technology at an event in February 2018.  [Id. ¶¶ 31–32].  Given the need to adhere to these deadlines, the parties began discussing the agreement's terms, including exclusivity, ownership, deal structure, and fees.  [Id. ¶¶ 33–34].  Plaintiff suggested that they continue to operate under the written agreement for the PoC until a new agreement could be finalized, and Defendant began arranging to provide Plaintiff with materials and support as Plaintiff commenced work on the new assignment.  [Id. ¶¶ 35–36].

Although the parties initially discussed extending the PoC agreement, [Am. Compl. ¶ 39], Defendant later informed Plaintiff that it wanted to skip an extension agreement and move directly into a commercial agreement, [id. ¶ 44].  On April 21, 2017, Defendant's employee, Francisco Herrerias ("Herrerias"), told Plaintiff that his goal was to have a commercial agreement in place within a few weeks, which was reiterated in another e-mail sent that same day.  [Id. ¶¶ 46–47].  Jared Fry ("Fry"), one of Plaintiff's principals and its Chief Operating Officer ("COO"), wrote to Herrerias several days later, emphasizing the need to finalize an agreement.  [Id. ¶ 48].  Fry works for Plaintiff from his home in Boston, Massachusetts.  [Id. ¶ 11].  On May 3, 2017, Herrerias responded, saying that he planned to travel to New Hampshire to at least reach a verbal agreement as to costs, fees, and "potential conditions," even though a written agreement was not yet in place.  [Id. ¶ 49].  Stan Fry ("Stan"),[1] another one of Plaintiff's principals, wrote to Defendant the following day, stating that Plaintiff had been working without

---

[1] The Court refers to Stan Fry as "Stan" so as to avoid confusion with Jared Fry ("Fry").

an agreement in place for six weeks and that they needed to make progress on a written agreement. [Id. ¶ 51]. Herrerias met with Plaintiff in New Hampshire from May 16–17, 2017, and the parties agreed to several material terms of the commercial agreement, including the use of a lump sum license model rather than a royalty-based license. [Id. ¶¶ 54–55]. Plaintiff proposed a license fee of $30 million and Defendant countered at $20 million, but the fee amount was still under negotiation when Herrerias returned to Finland. [Id. ¶¶ 56–57].

Plaintiff sent Defendant a draft agreement and the parties continued to negotiate its terms. [Am. Compl. ¶¶ 58–59]. Herrerias told Plaintiff that he had received approval for a $20 million license fee and reassured Plaintiff that Defendant was reviewing the draft agreement and planned to move forward. [Id. ¶¶ 61–64]. During a trip to Finland in June 2017, Stan met with Defendant's senior management, one of whom was surprised that the commercial agreement had not yet been executed. [Id. ¶¶ 67–68]. On June 21, 2017, in response to an e-mail from Stan expressing concern about the delays, Herrerias said that an agreement was in place even in the absence of a signed, written contract. [Id. ¶¶ 69–70]. Defendant sent emails to Plaintiff throughout July 2017, asking Plaintiff to continue working and reassuring Plaintiff that an agreement was in place with the material terms unchanged. [Id. ¶¶ 72, 76].

Finally, on November 20, 2017, Defendant sent Plaintiff a draft agreement with significantly different terms, including a reduced license fee of $7 million. [Am. Compl. ¶ 78]. Herrerias told Plaintiff to make edits to the draft, which Plaintiff did, [id. ¶ 80], though Plaintiff also informed Defendant that it was stopping further development efforts on the project, [id. ¶ 79]. Defendant then wrote to demand that Plaintiff agree that there had never been an agreement between the parties. [Id. ¶ 81]. In spite of this, the parties continued to negotiate a

written agreement until November 2018, with Defendant making promises that a written agreement would be finalized while Plaintiff continued working on the project.  [Id. ¶ 83].

### B.      Procedural Background

On July 18, 2019, Plaintiff sent Defendant a demand letter asserting claims under Massachusetts law.  [ECF No. 28 at 2].  The parties then entered into a standstill agreement to delay any litigation to allow for settlement negotiations.  [ECF No. 36-1 at 5].  After mediation in New York on October 24, 2019 proved unsuccessful, the parties agreed to continue negotiating a settlement.  [Id. at 6].  On October 30, 2019, Defendant told Plaintiff that negotiations were over and immediately filed a declaratory judgment action against Plaintiff in Delaware Superior Court, Plaintiff's state of incorporation.  [Id.].  Meanwhile, on November 1, 2019, Plaintiff filed this lawsuit against Defendant, unaware of the Delaware suit.  [ECF No. 1]. One week later, Plaintiff became aware of the parallel suit in Delaware when Defendant served Plaintiff.  [ECF No. 36-1 at 6].  Plaintiff then filed a motion to stay the Delaware action, [id. at 7], and Defendant moved this Court to stay this action pending the Delaware court's decision on that motion, [ECF No. 18].  On April 30, 2020, the Delaware Superior Court granted Plaintiff's motion to stay, finding that "Delaware ha[d] no substantial interest in adjudicating this action." [ECF No. 36-1 at 17].

On January 30, 2020, Defendant filed the two pending motions to dismiss, one for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), [ECF No. 12], and the second for failure to state a claim under Rule 12(b)(6), [ECF No. 16].  Plaintiff opposed the

motions, [ECF Nos. 27, 28], and Defendant replied, [ECF Nos. 32, 34].  As the motion under

Rule 12(b)(2) is dispositive, the Court begins its analysis with that motion.

## II.   LEGAL STANDARD

Personal jurisdiction refers to a court's "power to require the parties to obey its [orders]."

Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt,

Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002)).  "A plaintiff consents to the personal

jurisdiction of a court by bringing suit in that court." Roberts v. Jack L. Marcus Co., No. 17-cv-

11782, 2018 U.S. Dist. LEXIS 6373, at *4 (D. Mass. Jan. 16, 2018) (citing Adam v. Saenger,

303 U.S. 59, 67 (1938)).  As to a defendant, however, the Due Process Clause "protects an

individual's liberty interest in not being subject to the binding judgments of a forum with which

he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v.

Rudzewicz, 471 U.S. 462, 471−72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310,

319 (1945)).  Therefore, a court may not assert jurisdiction over a defendant unless "the

defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S.

286, 297 (1980).  In addition to satisfying Due Process concerns, "[t]o establish personal

jurisdiction in a diversity case, a plaintiff must satisfy . . . the forum state's long-arm statute

. . . ." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014)

(citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).

As a rule, a plaintiff bears the burden of establishing a court's personal jurisdiction over a

defendant.  See Daynard, 290 F.3d at 50.  Under the "prima facie" standard for determining

whether a plaintiff has met this burden, "the inquiry is whether the plaintiff has proffered

evidence which, if credited, is sufficient to support findings of all facts essential to personal

jurisdiction." Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 79 (1st Cir. 2013) (quoting

Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  Plaintiffs may not, however,

establish a court's personal jurisdiction over defendants with "unsupported allegations in [the]

pleadings," and are instead "obliged to adduce evidence of specific facts." Platten v. H.G. Berm.

Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006) (first quoting Boit v. Gar-Tec Prods., Inc., 967

F.2d 671, 675 (1st Cir. 1992); then quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46

F.3d 138, 145 (1st Cir. 1995)).  The Court may also "add to the mix facts put forward by the

defendants, to the extent that they are uncontradicted." Daynard, 290 F.3d at 51 (quoting Mass.

Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998)).

Because "the [Massachusetts] long-arm statute imposes specific constraints on the

exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a

determination under the long-arm statute is to precede consideration of the constitutional

question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017).  Section 3 of the

Massachusetts long-arm statute allows for the exercise of "personal jurisdiction over a person,

who acts directly or by an agent, as to a cause of action in law or equity arising from" various

activities within or outside of the Commonwealth. Mass. Gen. Laws ch. 223A, § 3.

## III.       DISCUSSION

Defendant argues that Plaintiff has failed to allege sufficient contacts between Defendant

and Massachusetts and has therefore failed to establish personal jurisdiction under either the

Massachusetts long-arm statute or Due Process requirements.  [ECF No. 13 at 5–6].  Plaintiff

contends that it has satisfied the requirements under both prongs, due to Defendant's contact

with Plaintiff's employee, Fry, who is a Massachusetts resident.  [ECF No. 28 at 1].

In an affidavit filed in support of Plaintiff's opposition, Fry stated that he works "primarily" out of his home in Boston, Massachusetts.  [ECF No. 29 ¶ 3].  Fry also said that he engaged in hundreds of e-mail and telephone communications with Defendant during the period in question, and that these communications form the basis of Plaintiff's claims.  [Id. ¶ 4].  In addition, Fry stated that Defendant's employees knew he was working from Massachusetts, though he does not name specific employees who had knowledge of this fact.  [Id. ¶ 5]. Defendant has submitted copies of e-mails between Defendant and Fry, which show that communications with Fry were sent to and from his @collisioncomms.com e-mail address and that Fry did not use a signature block indicating his physical address.  See [ECF No. 15-2 at 2].

Plaintiff is not registered to do business in Massachusetts, [ECF No. 15-10 at 1 (search result from website for the Secretary of the Commonwealth, showing that Plaintiff is not registered do business in Massachusetts)],[2] and does not dispute that its principal place of business is in New Hampshire, see [Am. Compl. ¶ 11; ECF No. 28].  Although Plaintiff contends that Defendant communicated primarily with Fry, Defendant submitted communications it had with Fry, Stan, and Plaintiff's president, Joe Farkas ("Farkas").  See [(ECF No. 15-7 at 1 (January 31, 2017 e-mail between Farkas and Defendant's representatives); ECF No. 15-2 at 1

---

[2] In its memorandum in support of the motion to stay or dismiss, Defendant suggested that this fact prevented Plaintiff from bringing a case in this district under a Massachusetts gatekeeping statute.  [ECF No. 19 at 3 n.3 (citing Mass. Gen. Laws ch. 156D, § 15.02(a))]; see Mass. Gen. Laws ch. 156D, § 15.02(a) ("A foreign corporation transacting business in the commonwealth without delivering to the secretary of state for filing the certificate required by section 15.03 shall not maintain a proceeding in any court in the commonwealth until the certificate is delivered and filed.").  However, "[t]here is no reason to read the terms 'any court in the commonwealth' to refer to federal courts as well as Massachusetts state courts.  The relevant federal statute, 28 U.S.C § 1332, permits diversity actions, such as this one, without reference to any state business certification requirement.  To read a Massachusetts court gate keeping statute to bar a Congressional jurisdictional grant to federal courts would undermine § 1332."  Allianz Glob. Risks US Ins. Co. v. J.A. Miara Transp., Inc., No. 08-cv-11901, 2010 U.S. Dist. LEXIS 117357, at *8–9 (D. Mass. Nov. 4, 2010).

(May 19, 2017 e-mail from Fry to Herrerias); ECF No. 15-8 at 1 (June 15, 2017 e-mail from Stan

to Herrerias, copying Fry); ECF No. 15-5 at 1 (August 4, 2017 e-mail from Farkas to

Defendant's representatives, copying Fry)].  In addition, although the parties met in person in

New Hampshire and Finland, [Am. Compl. ¶¶ 28, 54, 67], Plaintiff does not allege that the

parties ever met in Massachusetts, see [id.; ECF No. 28).  Defendant submitted an affidavit with

its motion to dismiss, averring that it does not do business in Massachusetts, is not registered to

do business in the state, has no employees here, and does not own any real estate in the

Commonwealth.  [ECF No. 14].

### A.     Transacting Business in the Commonwealth Under § 3(a)

Plaintiff first alleges that this Court has jurisdiction over Defendant because Defendant

"transact[ed] . . . business in [the] commonwealth," under § 3(a) of the long-arm statute.  [ECF

No. 28 at 8 (quoting Mass. Gen. Laws ch. 223A, § 3(a))].

The "'transacting [any] business' test under section 3(a) is designed to identify deliberate,

as distinguished from fortuitous, contacts with the forum by the nonresident party."  Lyle

Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997).  Personal jurisdiction

under the statute does not turn "on the defendant's physical presence in Massachusetts" alone,

Tatro v. Manor Care, Inc., 625 N.E.2d 549, 552 (Mass. 1994), and "a defendant's relatively

minor contacts with a Massachusetts plaintiff" can be sufficient to meet the statutory standard,

especially where contact is not isolated, id.; see also Scuderi Grp., LLC v. LGD Tech., LLC, 575

F. Supp. 2d 312, 319 (D. Mass. 2008) (stating that a defendant's contacts can be minor to be

considered "transacting business").  In addition, "the 'arising from' clause in [the long-arm

statute] is . . . generously construed in favor of asserting personal jurisdiction, by applying a 'but

for' causation test."  Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d 102,

112 (D. Mass. 2003) (citing Tatro, 625 N.E.2d at 554).  The arising from inquiry asks whether

"the defendant's contacts with the Commonwealth constitute[d] the first step in a train of events

that result[ed] in the . . . injury."  Access Now, Inc. v. Otter Prods., LLC, 280 F. Supp. 3d 287,

291 (D. Mass. 2017) (internal quotation marks omitted) (quoting Lyle, 132 F.3d at 114).

      In support of jurisdiction under Section 3(a), Plaintiff cites cases that involve

Massachusetts-based corporate plaintiffs, see, e.g., Ealing Corp. v. Harrods, Ltd., 790 F.2d 978

(1st Cir. 1986); Workgroup Tech. Corp., 246 F. Supp. 2d 102; Diamond Grp., Inc. v. Selective

Distribution Int'l, Inc., 998 N.E.2d 1018 (Mass. App. Ct. 2013), Massachusetts resident

plaintiffs, see, e.g., Hahn v. Vt. Law Sch., 698 F.2d 48 (1st Cir. 1983), and/or Massachusetts

resident defendants, see, e.g., Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC, 993

N.E.2d 350 (Mass. App. Ct. 2013).  None of the cases Plaintiff cites involve asserting

jurisdiction based only on a defendant's contacts with a plaintiff's non-party employee.

      In essence, Plaintiff is asking this Court to assert jurisdiction over a foreign defendant

who contracted for work with a New Hampshire corporation, based solely on the fact that

Plaintiff happened to allow an employee, Fry, to work remotely.  On the facts alleged, Defendant

did not choose to work specifically with Fry over Plaintiff's New Hampshire-based employees,

nor did Fry work from Massachusetts at Defendant's request or to Defendant's benefit.  As a

result, Defendant's contacts with Massachusetts are "too fortuitous and incidental to fall within

the reach of the Massachusetts long-arm statute."  Aub v. Technicolor Entm't Servs., 224 F.

Supp. 2d 371, 374 (D. Mass. 2002).  As in Aub, the business relationship at hand "grew out of"

communications with Plaintiff in New Hampshire, not out of communications with Fry as an

individual.  See id.  "None of [defendant]'s executives ever traveled to Massachusetts, and all of

[plaintiff's] face-to-face meetings . . . took place elsewhere."  Id.  Similarly, "[t]he only reason

[defendant] ever had any contacts with Massachusetts" was because of that plaintiff's personal choice to work out of the state, and "it was of no consequence to [defendant] that [plaintiff] performed any . . . work . . . in this Commonwealth."  Id.  Furthermore, Fry, unlike the employee in Aub, is not a named plaintiff.

The communications Defendant sent into Massachusetts were not the "but for" cause of Defendant's alleged false statements and contractual breaches, as Defendant directed these communications to Plaintiff, a New Hampshire corporation, rather than Fry as an individual.  See Tatro, 625 N.E.2d at 554.  Plaintiff's own filings support such a finding.  See, e.g., [ECF No. 28 at 1 (referencing Defendant's "voluntary, persistent, and ongoing business communications *to Collision*" (emphasis added)); id. at 2 (referencing "misrepresentations intended *to induce Collision*" and stating that Defendant "communicat[ed] those statements *to Collision*" (emphasis added)); id. at 11 (stating that Defendant engaged in "numerous phone calls and emails *with Collision*" (emphasis added))].  Defendant's contacts with Massachusetts can hardly be said to have "constitute[d] the first step in a train of events that result[ed] in the . . . injury" when Defendant contracted with a New Hampshire corporation to provide services.  Access Now, 280 F. Supp. 3d at 291 (quoting Lyle, 132 F.3d at 114).  Plaintiff therefore fails to demonstrate that Defendant's contacts with Massachusetts were deliberate, rather than fortuitous, under Section 3(a).

### B.      Causing Tortious Injury by an Action in the Commonwealth Under § 3(c)

Plaintiff also alleges that this Court has jurisdiction over Defendant under Section 3(c) of the Commonwealth's long-arm statute, which provides for jurisdiction over a defendant who has "caus[ed] tortious injury by an act or omission in this commonwealth."  [ECF No. 28 at 13 (quoting Mass. Gen. Laws ch. 223A, § 3(c))].  According to Plaintiff, Defendant's allegedly false

representations were communicated by e-mail and telephone to Fry while he was "working out of and based in Boston, Massachusetts."  [Am. Compl. ¶ 105].

"[S]ection 3(c) requires a well-pleaded allegation that a defendant did some act *in* the Commonwealth that caused the plaintiff harm."  Noonan v. Winston Co., 902 F. Supp. 298, 306 (D. Mass. 1995) (emphasis in original).  In Murphy v. Erwin-Wasey, Inc., a case that also involved a tort claim of misrepresentation, the First Circuit held that, "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972); see Filmore v. VSP N. Am., LLC, No. 18-cv-10256, 2019 U.S. Dist. LEXIS 6389, at *19 (D. Mass. Jan. 14, 2019) (citing Murphy and finding no jurisdiction under Section 3(c)).  In Murphy, however, as in Aub, the Plaintiff was a resident of Massachusetts.  Murphy, 460 F.2d 661; Aub, 224 F. Supp. 2d 371.  In addition, Murphy references an intent element ("knowingly") that is lacking here.  See 460 F.2d at 664.  Unlike in Calder v. Jones, in which the Supreme Court held that the defendants "knew that the brunt of that injury would be felt by [the plaintiff] in the state in which [plaintiff] lives and works," 465 U.S. 783, 789–90 (1984), and Hugel v. McNell, in which the First Circuit held that "it [could] be fairly inferred that [defendants] intended the brunt of the injury to be felt in [the forum state]," 886 F.2d 1, 4–5 (1st Cir. 1989), here Defendant allegedly intended to cause harm to Plaintiff, a resident of New Hampshire, but it is not clear that Defendant intended Fry— as an individual—to be harmed at all, much less within Massachusetts.

The Court has "profound reservations about extending the Murphy rationale" to apply to alleged harms directed to a plaintiff that is a resident of one state but that are coincidentally felt by a plaintiff's telecommuting employee in another state.  Ticketmaster-New York, 26 F.3d at

205.  Cf. Pushor v. Mount Wash. Observatory, Inc., No. 2:17-cv-00354, 2018 U.S. Dist. LEXIS

122573, at *16 (D. Me. May 17, 2018) (declining to exercise personal jurisdiction over New

Hampshire employer in a suit brought by an employee who was a resident of Maine because "it

is difficult to see how, by allowing [plaintiff] to work from Maine, [defendant] was invoking the

benefits and protections of Maine's law").

          The Court finds that Defendant's alleged actions were not intended to cause harm within

the Commonwealth as required by Section 3(c).  See Murphy, 460 F.2d 664.

####     C.     Constitutional Analysis

          Even if the Massachusetts long-arm statute provided for jurisdiction under Section 3(a) or

3(c), the Court would still lack jurisdiction under the Due Process Clause of the Fourteenth

Amendment.  Courts may exercise two types of personal jurisdiction under the Fourteenth

Amendment: general or specific.  "[G]eneral jurisdiction requires affiliations 'so continuous and

systematic as to render [a person] essentially at home in the forum State.'"  Daimler AG v.

Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v.

Brown, 564 U.S. 915, 919 (2011)).  In Daimler, the Supreme Court explained that, with respect

to a corporate defendant, "the place of incorporation and principal place of business are

paradig[m] . . . bases for general jurisdiction."  571 U.S. at 137 (alteration in original) (internal

quotation marks and citation omitted).  Here, Defendant is at home in Finland, not

Massachusetts, thus precluding a finding of general jurisdiction.  See [Am. Compl. ¶ 12; ECF

No. 14].

          The jurisdictional inquiry therefore requires a finding that this Court can exercise specific

personal jurisdiction over Defendant.  "Specific jurisdiction exists when there is a demonstrable

nexus between a plaintiff's claims and a defendant's forum-based activities."  United States v.

Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (quoting Mass. Sch. of Law at

Andover, Inc., 142 F.3d at 34).  For the Court to have specific jurisdiction over Defendant

consistent with the Due Process Clause, Plaintiff must demonstrate that each of three conditions

is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the
> defendant's forum-state activities.  Second, the defendant's in-state contacts must
> represent a purposeful availment of the privilege of conducting activities in the forum
> state, thereby invoking the benefits and protections of that state's laws and making the
> defendant's involuntary presence before the state's courts foreseeable.  Third, the
> exercise of jurisdiction must . . . be reasonable.

Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144).  The inquiry "is 'not susceptible

[to] mechanical application,'" PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st

Cir. 2019) (quoting Kulko v. Superior Court of Cal., 436 U.S. 84, 92 (1978)), rather, "'[e]ach

case requires an individualized weighing of the material facts,'" United Elec., Radio & Mach.

Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992) (quoting Burger

King Corp., 471 U.S. at 485–86).

      1.    Relatedness

To satisfy the relatedness requirement, "the claim underlying the litigation must directly

arise out of, or relate to, the defendant's forum-state activities."  Foster-Miller, 46 F.3d at 144.

In a contract dispute, when "examining the defendant's relationship to the forum '[the Court]

look[s] to whether the defendant's activity in the forum state was instrumental either in the

formation of the contract or its breach.'"  Adelson v. Hananel (Adelson I), 652 F.3d 75, 81 (1st

Cir. 2011) (internal quotation marks omitted) (quoting Adams v. Adams, 601 F.3d 1, 6 (1st Cir.

2010)).  In assessing relatedness in a tort action, the Court considers "whether the plaintiff has

established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's

forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause

of action)."  Scottsdale Capital Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20–21 (1st Cir.

2018) (citations and internal quotation marks omitted).  "The relatedness standard is a 'flexible,

relaxed standard,' which focuses on the 'nexus between the defendant's contacts and the

plaintiff's cause of action.'"  Adelson v. Hananel (Adelson II), 510 F.3d 43, 49 (1st Cir. 2007)

(internal citations omitted).

Defendant allegedly contracted with a New Hampshire company and Plaintiff has failed

to demonstrate that Defendant's communications with Fry were instrumental to the alleged

formation or breach of that contract.  See Adelson I, 652 F.3d at 81.  As for Plaintiff's tort claim,

for the reasons discussed in Section III.A–B, supra, Plaintiff's claim does not arise out of

Defendant's activities in the Commonwealth because Defendant's contacts with the state were

fortuitous, rather than deliberate, and because they were neither directed towards nor intended to

cause harm within the Commonwealth.  Plaintiff has therefore failed to show "a demonstrable

nexus between [its] claims and [the] defendant's forum-based activities, such . . . [that] the

litigation itself is founded directly on those activities."  C.W. Downer, 771 F.3d at 66 (alteration

in original) (quoting Adelson I, 652 F.3d at 81).

> 2.    Purposeful Availment

The Court must next determine whether Defendant's in-state contacts "represent a

purposeful availment of the privilege of conducting activities in the forum state."  Sigros v. Walt

Disney World Co., 129 F. Supp. 2d 56, 66 (D. Mass. 2001).  For Defendant to have purposefully

availed itself of the privilege of conducting activities in Massachusetts, its contacts with

Massachusetts must be voluntary, so that "jurisdiction is not premised on 'random, isolated, or

fortuitous' contacts with the forum state," Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 245 (D.

Mass. 2012) (internal citation omitted), and foreseeable, such that it should "reasonably

anticipate being haled into court" in Massachusetts, Phillips, 530 F.3d at 28 (quoting Adelson II, 510 F.3d at 50).  "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant [itself].'"  Phillips, 530 F.3d at 28 (quoting Burger King Corp., 471 U.S. at 475).  Those contacts "must be deliberate, and 'not based on the unilateral actions of another party.'"  Id. (quoting Adelson II, 510 F.3d at 50)

On the facts alleged, Defendant certainly intended to communicate with Plaintiff and purposefully availed itself of the privilege of conducting business in Plaintiff's home state of New Hampshire.  Here, however, Defendant neither purposefully availed itself of the privilege of conducting business in Massachusetts nor reasonably anticipated being haled into court in the Commonwealth merely by communicating with one of Plaintiff's employees, who happened to be working from Massachusetts rather than from the company's headquarters in New Hampshire.  Such contacts reflect "the unilateral actions of another party," rather than Defendant.  Phillips, 530 F.3d at 28.  Again, this situation is distinct from Calder, where the defendant's "intentional, and allegedly tortious actions were expressly aimed at [the forum state]."  Calder, 465 U.S. at 789.

In-person meetings between the two companies took place at Plaintiff's office in New Hampshire and Defendant's offices in Finland.  [ECF No. 13 at 3, 5].  Defendant communicated with Collision employees who were based in New Hampshire by e-mail and telephone.  See [ECF Nos. 15-5, 15-7, 15-8].  Plaintiff's Massachusetts-based employee is not a party to this matter and the harm alleged is to Plaintiff through Defendant's contacts with the employee, rather than a harm to the individual employee himself.  See generally [Am. Compl.].  Even if Defendant knew, as Plaintiff alleges, that Fry was working out of Boston, [id. ¶ 106], the Court finds that fact alone does not suffice to meet the purposeful availment requirement, where it was

Plaintiff's choice to allow its employee to work out of state and Defendant had contracted with

Plaintiff, not Fry.  Lastly, Defendant does not offer any services in Massachusetts, owns no

property in Massachusetts, has no employees in Massachusetts, and is otherwise unrelated to the

forum.  See Media3 Techs., LLC v. CableSouth Media III, LLC, 17 F. Supp. 3d 107, 112 (D.

Mass. 2014).[3]  Defendant's contacts with the state through Fry were simply "fortuitous,"

Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995), therefore Plaintiff has failed to

demonstrate that Defendant purposefully availed itself of the privilege of conducting business in

Massachusetts.

3.     Reasonableness

Even if Plaintiff could satisfy the relatedness and purposeful availment prongs, Plaintiff

cannot meet the reasonableness prong.  The First Circuit has identified the following "Gestalt

factors" to guide the reasonableness inquiry:

> (1) the defendant's burden of appearing, (2) the forum state's interest in
> adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in obtaining the most effective
> resolution of the controversy, and (5) the common interests of all sovereigns in
> promoting substantive social policies.

Pritzker v. Yari, 42 F.3d 53, 63–64 (1st Cir. 1994) (quoting United Elec., 960 F.2d at 1088).

Because none of the other prongs have been met, the Court addresses each Gestalt factor only

---

[3] In its opposition, Plaintiff states that "one of [Defendant's] worldwide offices is located in . . .
Westford, Massachusetts," [ECF No. 28 at 4], but later acknowledges that this office is leased
by a subsidiary, Nokia of America, [id. at 12].  Defendant admits that this office is leased by a
non-party affiliate and correctly notes that Plaintiff has not alleged any interactions with this
office.  [ECF No. 32 at 2 n.2].  "Ordinarily, courts respect the legal independence of a
corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets
jurisdiction over the parent."  United Elec., 960 F.2d at 1091.  "[T]he 'presumption of corporate
separateness [may] be overcome by clear evidence that the parent in fact controls the activities of
the subsidiary.'"  Id. (quoting Escude Cruz v. Ortho Pharma. Corp., 619 F.2d 902, 905 (1st Cir.
1980)).  Other than drawing the Court's attention to this subsidiary, Plaintiff has not provided
any evidence linking the subsidiary to the events alleged in its complaint, or showing that
Defendant controls the subsidiary.

briefly.  See Ticketmaster-New York, 26 F.3d at 210 ("[T]he reasonableness prong of the due

process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs

(relatedness and purposeful availment), the less a defendant need show in terms of

unreasonableness to defeat jurisdiction.").

    In sum, Massachusetts cannot be said to have an interest in adjudicating a dispute

between a New Hampshire company, incorporated in Delaware, and a Finnish company, merely

because the latter directed communications to an employee of the former who happened to be in

this state.  See Saeed v. Omex Sys., Inc., No. 16-cv-11715, 2017 U.S. Dist. LEXIS 155223, at

*18–20 (D. Mass. Sept. 22, 2017) (finding Massachusetts did not have an interest in adjudicating

a dispute where the contract at issue was not governed by Massachusetts law and Defendant had

not conducted business in the state).  Similarly, the most effective resolution of this matter is not

likely through adjudication in this forum when Plaintiff is located in New Hampshire and will

have witnesses and documents outside of the Commonwealth.  Although "a plaintiff's choice of

forum must be accorded a degree of deference with respect to the issue of its own

convenience," Sawtelle, 70 F.3d at 1395, Plaintiff could obtain convenient and effective relief in

its own state rather than in this district.  Although Defendant, as a foreign corporation, would be

burdened by litigating in Massachusetts, as the First Circuit has recognized, "it is almost always

inconvenient and costly for a party to litigate in a foreign jurisdiction," Nowak v. Tak How Invs.,

94 F.3d 708, 718 (1st Cir. 1996), and Defendant has not identified a unique circumstance that

would make it unduly burdensome, see id.  Finally, the common interests of all sovereigns in

promoting substantive social policies is absent where, as here, Plaintiff is not a citizen of

Massachusetts.  See id. at 719 (considering a state's interest in protecting its citizens in assessing

this factor).  On the whole, the Gestalt factors do not support a finding of reasonableness in exercising personal jurisdiction over Defendant.  See Pritzker, 42 F.3d at 63–64.

        4.       Summary

Plaintiff has failed to "proffer[] evidence which, if credited, [would be] sufficient to support findings of all facts essential to personal jurisdiction."  Bluetarp Fin., Inc., 709 F.3d at 79 (quoting Phillips, 530 F.3d at 26).  The Court therefore finds that exercise of personal jurisdiction over Defendant within this district is improper.

**D.**      **Transfer**

Although this Court may not exercise personal jurisdiction over Defendant, under 28 U.S.C. § 1631, a district court should transfer a case to another district to cure a lack of jurisdiction:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.  "The First Circuit has interpreted this provision to establish a presumption in favor of transfer—rather than dismissal—when the forum court lacks personal jurisdiction over one of the defendants."  TargetSmart Holdings, LLC v. GHP Advisors, LLC, 366 F. Supp. 3d 195, 214 (D. Mass. 2019) (citing Fed. Home Loan Bank of Boston v. Moody's Corp., 821 F.3d 102, 119 (1st Cir. 2016)); see also Britell v. United States, 318 F.3d 70, 73 (1st Cir. 2003) ("Congress's use of the phrase 'shall . . . transfer' in section 1631 persuasively indicates that transfer, rather than dismissal, is the option of choice.").

1.     Venue

To determine whether transfer of this case is appropriate and, if so, where it should be transferred to, the Court must consider the issue of venue.

The term "venue" refers to "the geographic specification of the proper court or courts for the litigation of a civil action that is within the subject-matter jurisdiction of the district courts." 28 U.S.C. § 1390(a).  "[T]he general purpose of the venue rules is 'to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial.'"  Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (alteration in original) (quoting Leroy v. Great W. United Corp., 443 U.S. 173, 183–84 (1979)).  The general venue statute provides that a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

"'[A]mple authority' exists that the burden of establishing venue is on the plaintiff."  Gill v. Nakamura, No. 14-cv-13621, 2015 WL 5074475, at *2 (D. Mass. July 24, 2015) (citing Cordis Corp. v. Cardiac Pacemakers, 599 F.2d 1085, 1086 (1st Cir. 1979)).  Because the Court has found that it does not have personal jurisdiction over Defendant, see Section III.A–C, supra, venue is improper in this judicial district, see Moore v. S.N.H. Med. Ctr., No. 08-cv-11751, 2009 WL 5214879, at *10 (D. Mass. Aug. 18, 2009) ("[Corporate defendant] is not subject to personal jurisdiction, and therefore does not reside, in Massachusetts.  Accordingly, venue . . . in Massachusetts is inappropriate.").

Similar to Section 1631, under 28 U.S.C. § 1406(a), a district court may "'transfer [a] case to any district or division in which it could have been brought' if it 'lay[s] venue in the wrong division or district' and transfer is 'in the interest of justice.'"  TargetSmart Holdings, 366 F. Supp. 3d at 214 (alterations in original) (citing 28 U.S.C. § 1406(a)).  Although Section 1406 "does not explicitly mention jurisdiction, the Supreme Court has interpreted its mandate to 'authorize transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not.'"  Id. (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962)).

Both Sections 1406 and 1631 support transfer over dismissal in the interests of justice and to promote judicial economy.  See Britell, 318 F.3d at 74 (stating that the legislative history of Section 1631 favors transfer over dismissal of "an action . . . that might thrive elsewhere" as furthering "the salutary policy favoring the resolution of cases on the merits"); TargetSmart Holdings, 366 F. Supp. 3d at 214 (stating that transfer under Section 1406 would promote the interest of justice and "facilitate the speedy and efficient resolution of [the] case").  There exists a strong public interest in "prevent[ing] duplicitous litigation that would prove 'wasteful and costly'" which also supports transfer over dismissal.  See Britell, 318 F.3d at 74 (quoting S. Rep. No. 97-275, at 11 (1982), reprinted in 1982 U.S.C.C.A.N. 11, 21).

Although Massachusetts is an inappropriate venue, the record contains sufficient facts to indicate that New Hampshire is the appropriate venue in which to litigate this matter as it is the jurisdiction where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred.  See 28 U.S.C. § 1391(b)(2).  For this reason, and because substantive public interests weigh in favor of transfer rather than dismissal of Plaintiff's case, this Court finds it proper and in the interests of justice to transfer this matter to the District of New Hampshire.  See, e.g.,

Phoenix Ins. Co. v. Cincinnati Indem. Co., No. 16-cv-223S, 2017 WL 3225924, at *6 (D.R.I.

Mar. 3, 2017) ("[D]ue to the lack of personal jurisdiction and proper venue in this District and

the totality of the circumstances, I conclude that the interests of justice would be better served by

transfer of this action . . . than by dismissal under Rules 12(b)(2) and (3) . . . ."), report and

recommendation adopted, No. 16-cv-223S, 2017 WL 2983879 (D.R.I. July 13, 2017).

### E.    Defendant's 12(b)(6) Motion to Dismiss

"[A] federal court generally may not rule on the merits of a case without first determining

that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the

parties (personal jurisdiction)."  Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S.

422, 430–31 (2007); see Acosta-Ramírez v. Banco Popular de P.R., 712 F.3d 14, 18 (1st Cir.

2013) ("Federal courts are obliged to resolve questions pertaining to . . . jurisdiction before

addressing the merits of a case.").  "Because Plaintiff has not carried its burden to establish

personal jurisdiction, the court does not address" Defendant's Rule 12(b)(6) motion, but will

deny the motion with leave to renew it upon transfer to the District of New Hampshire.  See

Dumitrescu v. DynCorp Int'l, LLC, 257 F. Supp. 3d 13, 16 n.2 (D.D.C. 2017) (stating that, due

to a lack of personal jurisdiction, "the [c]ourt is constrained to leave any adjudication of the

merits to the" transferee court).  Defendant's motion to dismiss for failure to state a claim, [ECF

No. 16], is therefore DENIED.

## IV.    CONCLUSION

Accordingly, Defendant's motion to dismiss for lack of personal jurisdiction, [ECF No.

12], is GRANTED in part and DENIED in part, and Defendant's motion to dismiss for failure to

state a claim, [ECF No. 16], is DENIED with leave to renew.  This action will be transferred to

the District of New Hampshire for further proceedings.

**SO ORDERED.**

September 2, 2020                                    /s/ Allison D. Burroughs
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE