**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., | |
| Plaintiff, | |
| v. | C.A. No. 1:20-cv-00949-JD |
| NOKIA SOLUTIONS AND NETWORKS OY, | **HEARING REQUESTED** |
| Defendant. | |

**NOKIA SOLUTIONS AND NETWORKS OY'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, defendant Nokia Solutions and
Networks Oy ("Nokia") respectfully moves for summary judgment on all counts of plaintiff
Collision Communications, Inc.'s ("Collision") Second Amended Complaint (the "Complaint")
(Dkt. 54). This lawsuit stems from the parties' failure to come to terms on a contract concerning
a complex technology collaboration after twenty-two months of negotiations. Despite the fact
that the parties exchanged numerous draft agreements between May 2017 and September 2018,
with each side pressing for a number of important deal points, Collision claims in this lawsuit
that an oral contract was formed on June 6, 2017 during a phone call between Jared Fry (of
Collision) and Francisco (Paco) Lopez Herrerias (of Nokia). This date is more strategic than
factual, as there is not a single document in the record evidencing that a contract was formed on
that date (or suggesting that either side believed a contract was formed on that date). As best as
Nokia can tell, that date was selected because it predates the first draft agreement proposed by
Nokia, as Collision wants to deprive Nokia of any of the benefits Nokia's procurement
department sought to include in Nokia's agreement with Collision.

1

ME1 35377951v.1

The notion that Nokia agreed to enter into a $23 million technology collaboration by way of an oral agreement during a brief phone call is not only farfetched, but it is wholly without record support.  It is also untenable for Collision to claim that Nokia breached an oral contract without, at the very least, identifying the alleged terms of the parties' contract.  Indeed, each time Nokia has sought to show that Collision's claims are without merit, Collision shifts gears and develops a new theory of its case, taking advantage of the lack of a written contract to make the contract be whatever will allow Collision to survive the pending motion.  Operating in this fashion is highly prejudicial to Nokia as it deprives Nokia of the ability to avail itself of numerous contract terms it negotiated, including the right to have this dispute arbitrated.  It also prejudices Nokia in the discovery process because Nokia is hamstrung in pursuing appropriate discovery without knowing what the contract is it is accused of breaching.

Collision's Complaint alleges the following six causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) promissory estoppel; (4) negligent/intentional misrepresentation; (5) quantum meruit; and (6) violation of RSA Chapter 358-A.  Nokia seeks dismissal of these claims on the following grounds (in addition to the further grounds raised in this accompanying memorandum of law):

1.      The record does not support Collision's claim that Nokia made an offer on June 6, 2017, that Collision purportedly accepted.  As noted in the case *Teachers Ins. & Annuity Ass'n of Am. v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987), courts should avoid "trapping parties in surprise contractual obligations that they never intended." *Id.* at 497. "It is fundamental to contract law that mere participation in negotiations and discussions does not create binding obligation, even if agreement is reached on all disputed terms. More is needed than agreement on each detail, which is overall agreement (or offer and acceptance) to enter into the binding

2

contract." *Id.*  What Collision is hoping to accomplish in this case is what the court in *Tribune Co.* counsels should be avoided – trapping Nokia into a surprise contract it never intended. Indeed, before Collision's claims are allowed to proceed, it should have to establish that there is some legal merit to its claim that Nokia made on offer on June 6, 2017, which Collision purportedly accepted, notwithstanding Collision's admission that Nokia stated during this call that it intended to provide markups to Collision's proposed agreements.  Because this claim does not have legal merit, judgment should enter on Collision's breach of contract claim.

2.       Collision's breach of the implied covenant claim fails for the simple reason that there was no contract between the parties, and the record shows that Nokia never made pre-contractual misrepresentations to Collision.

3.       Collision's promissory estoppel claim fails because Collision cannot show that it reasonably relied on any of Nokia's statements.  Nokia never told Collision it would pay Collision for its negotiation efforts if the parties were unable to consummate a deal, and even stated on numerous occasions that it would not pay such costs.  Moreover, Collision made binding admissions on nearly a dozen occasions that it knew it was not under contract with Nokia and that it was incurring negotiation costs in anticipation of a contract being formed.  It is inappropriate for Collision to knowingly incur these costs and then seek to transfer its risk to Nokia when a deal was not consummated.  As the First Circuit explained in *Trifiro v. New York Life Ins. Co.*, 845 F.2d 30 (1st Cir. 1988), when a party receives conflicting information, "a reasonable person investigates matters further; he receives assurances or clarification before relying.  A reasonable person does not gamble with the law of the excluded middle, he suspends judgment until further evidence is obtained….  The law does not supply epistemological

3

insurance. Nor does it countenance reliance on one of a pair of contradictories simply because it facilitates the achievement of one's goal." *Id.* at 33–34.

4.     Collision's misrepresentation claim fails for the same reasons (*i.e.*, Nokia did not make any misstatements, Collision admits it did not rely on any of Nokia's statements, and any claimed reliance would be unreasonable as a matter of law), and also because the claim is barred by the economic loss rule. *See Schaefer v. IndyMac Mortg. Servs.*, No. 12-CV-159-JD, 2012 WL 4929094, at *5 (D.N.H. Oct. 16, 2012), aff'd, 731 F.3d 98 (1st Cir. 2013).

5.     Collision's quantum meruit claim fails because it is not reasonable to expect payment for a party's efforts incurred while seeking to enter into a contract, and because Collision never conferred any benefit on Nokia.

6.     Lastly, Collision's RSA 358-A claim fails because there is no evidence that Collision engaged in any conduct that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce, and because Collision admits that all of the allegedly offending statements were made by Mr. Herrerias (who works in Germany) to Jared Fry (who works in Boston).

7.     Nokia requests a hearing on this motion.

For these reasons, and for the additional reasons set forth in Nokia's accompanying Memorandum of Law, the Court should grant this Motion in its entirety, should enter judgment in Nokia's favor and against Collision, and should grant such other and further relief as it deems just and proper.

ME1 35377951v.1

Respectfully submitted,

NOKIA SOLUTIONS AND NETWORKS OY,

By its attorneys,

/s/ David Himelfarb
David Himelfarb, NHBA # 19754
dhimelfarb@mccarter.com
John Allen, admitted *pro hac vice*
jallen@mccarter.com
McCarter English, LLP
265 Franklin Street
Boston, MA  02110
Tel:  (617) 449-6500
Fax: (617) 607-9200

January 6, 2021

## CERTIFICATE OF SERVICE

I, David Himelfarb, hereby certify that on this 6th day of January, 2021, a true copy of the above document was served on counsel for all parties through the Court's ECF/CM system.

/s/ David Himelfarb
David Himelfarb

ME1 35377951v.1