UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>NOKIA SOLUTIONS AND NETWORKS OY,<br><br>Defendant. | C.A. No. 1:20-cv-00949 |

**COLLISION COMMUNICATIONS' OPPOSITION TO
NOKIA SOLUTIONS AND NETWORKS OY'S MOTION FOR RECONSIDERATION**

**i. Introduction**

Plaintiff Collision Communications, Inc. opposes Nokia Solutions and Networks Oy's Motion for Reconsideration (Docket #63). The Motion fails to identify *any* "manifest error of fact or law," Local Rule 7.2(d), that would entitle Nokia to seek such extraordinary relief. The Motion also fails to advance any meritorious reason to dismiss any of Collision's claims and is redundant of Nokia's simultaneously filed motion for summary judgment (Docket #63). Accordingly, Nokia's motion should be denied.

As reflected in the Court's docket, on November 11, 2020, Nokia previously filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) (Docket No. 55) and, in doing so, improperly attached extrinsic documents in support of its motion. On December 23, 2020, this Court (DiClerico, J.), in a reasoned order, identified this procedural deficiency and, on that basis, denied Nokia's motion "without prejudice to filing a properly supported motion for summary judgment." Docket #60.

Nokia has, even before discovery has commenced, now precipitately filed a motion for summary judgment, but Nokia's Motion is separately also asking the Court to go back to its *original* motion to dismiss and parse through Nokia's original arguments to determine which depend on extrinsic documents and which do not. The Court should decline Nokia's invitation to undertake this burdensome task. Local Rule 7.2 does not permit reconsideration under such circumstances and, moreover, even if the Court were to reconsider Nokia's Motion to Dismiss, there is no basis to dismiss any of Nokia's claims.

As argued more fully below, Nokia's Motion fails for the following reasons: (1) Nokia's request for reconsideration is not proper under Local Rule 7.2; and (2) none of Collision's claims are subject to dismissal under Fed. R. Civ. P. 12(b)(6) or 9(b). Therefore, the Court should deny Nokia's Motion.

### ii. Relevant Procedural Background

As the Court's docket reflects, Collision commenced this litigation in November 2019 in the United States District Court for the District of Massachusetts. See Docket #1. Following dispositive motion practice (see Docket #12 and #16), on September 9, 2020, the District of Massachusetts transferred the case to this Court. See Docket #39. Collision filed its Second Amended Complaint on October 21, 2020, the first amendment that Collision filed in this Court. See Docket #54 (the "Complaint"). Collision's Complaint includes claims for: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Promissory Estoppel; (4) Negligent/Intentional Misrepresentation; (5) Quantum Meruit; and (6) Violation of New Hampshire RSA c. 358-A. See id.

On November 11, 2020, Nokia filed a Motion to Dismiss the Complaint. See Docket #55. In doing so, Nokia apparently chose to disregard the well-established Rule 12(b)(6) standard,

which requires a moving party to rely solely on allegations in the complaint (and documents necessarily incorporated therein). See Fed. R. Civ. P. 12(b)(6). Instead, Nokia chose to rely upon numerous, cherry-picked documents that were neither attached to nor integrated into the Complaint and urged that its interpretation of those documents required dismissal of Collision's claims. See id. In denying Nokia's motion, the Court correctly recognized that "Nokia is introducing additional communications from the parties' email chains and two draft agreements in order to challenge Collision's allegations in the complaint[,]" which is not appropriate under Rule 12(b)(6). See Docket #60.

On January 6, 2021, Nokia filed the instant Motion, requesting that the Court reconsider its previous order. See Docket #62. In its motion, Nokia argues that the Court should go back and sift through the arguments in its original motion to dismiss to determine which of its arguments did not necessarily rely upon its extrinsic exhibits. See id. In addition, Nokia has also filed a separate motion for summary judgment largely based on the same exhibits it previously attached to its Motion to Dismiss. See Docket #63.

**v. Argument**

Nokia's motion for reconsideration fails, *first*, because Nokia is not entitled to reconsideration of its motion to dismiss, and *second*, because, even if the Court were to reconsider the motion to dismiss, Collision's claims have been properly pled and, as a result, there is no basis to dismiss any of the claims.

**I. NOKIA'S REQUEST FOR RECONSIDERATION IS NOT PROPER UNDER LOCAL RULE 7.2**

Nokia has no valid basis to request reconsideration of its motion to dismiss. "Reconsideration is 'an extraordinary remedy which should be used sparingly.'" Johnson as Tr. of Martha Wood Tr. v. Capital Offset Co., Inc., No. 11-CV-459-JD, 2014 WL 12910643, at *1

(D.N.H. Apr. 10, 2014) (quoting Fabrica de Muebles J.J. Alvarez, Inc. v. Inversiones Mendoza, Inc., 682 F.3d 6, 31 (1st Cir. 2012)) (DiClerico, J.). Such a motion "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented [previously]." Id. On the contrary, pursuant to Local Rule 7.2(d), a party may *only* move for reconsideration of an interlocutory order where "the order was based on a manifest error of fact or law[.]" See, e.g., Micronics Filtration Holdings, Inc. v. Miller, No. 18-CV-303-JL, 2018 WL 6529081, at *1 (D.N.H. Dec. 12, 2018) (Laplante, J.) (applying Local Rule 7.2(d) and denying motion for reconsideration where the moving party "has identified no manifest error in the court's application of [the relevant case]").

Here, Nokia does not even attempt to argue that it is moving for reconsideration based on the Court's manifest error of fact or law. Instead, Nokia requests that the Court parse its motion to pick out arguments that, Nokia contends, can be decided based on the allegations in the Complaint. See Motion at 1. In doing so, Nokia provides a bullet-pointed outline of its original Memorandum in Support of its Motion to Dismiss, directing the Court to arguments scattered throughout that Memorandum that Nokia now claims do not rely on extraneous materials. See Motion at 2. Nokia's request for re-review of the precise arguments that it already made, without any reference to any error of fact or law by the Court, plainly runs afoul of Local Rule 7.2(d). The fact that Nokia chose not to comply with Fed. R. Civ. P. 12(b)(6) in making its arguments for dismissal originally does not entitle it to a "do over." Nokia's motion should be denied on this ground alone.

## II. NONE OF COLLISION'S CLAIMS ARE SUBJECT TO DISMISSAL UNDER FED. R. CIV. P. 12(B)(6) OR 9(B)

Even if the Court were to reconsider Nokia's Motion to Dismiss, as set forth in summary below and in detail in Collision's Opposition to Nokia's Motion to Dismiss (see Docket #57), Collision's claims have all been properly pled and should not be dismissed.

### A. Collision's Breach of Contract Claim Is Well-Pled

Nokia argues that Collision's claim for breach of contract should be dismissed for the following, limited reasons: (1) there is no allegation that Nokia accepted Collision's offer; (2) allegations in the Complaint do not show that Nokia intended to be bound by a contract; and (3) as to an oral or implied contract, there are no allegations of offer and acceptance and the terms alleged were not suitably definite. Nokia's arguments are conclusory and contrary to the plain language of the Complaint, in which Collision adequately pled each element of its breach of contract claim.

#### 1. The Complaint Alleges Offer and Acceptance

The Complaint properly alleges offer and acceptance, namely, that *Nokia made a verbal offer to Collision* to license specific technology based on specific terms and that *Collision accepted that offer*. See Complaint, ¶¶ 62-64. This is sufficient to meet the offer and acceptance elements of a contract claim. See International Bus. Machines Corp. v. Khoury, 170 N.H. 492, 500, 177 A.3d 724, 731 (2017). Thus, there is no merit to Nokia's argument that the breach of contract claim fails due to the absence of an allegation of offer and acceptance.

#### 2. The Complaint Alleges That Nokia Intended To Be Bound

There are ample allegations to support Collision's claim that Nokia intended to be bound by the parties' contract. See Complaint, ¶ 64. Specifically, in describing the formation of the agreement, Collision alleges that Nokia expressly stated that it intended to reach a verbal

5

agreement and, after that agreement was reached, Nokia confirmed that while the parties documented their agreement in writing, the material terms remained in place and unchanged. See id., ¶¶ 50-51. Moreover, the Complaint alleges that Nokia repeatedly told Collision that an agreement was in place, see id., ¶ 71, that the parties had agreed to all material terms, see id., and that Collision should "trust [Nokia's] process, we will make this a success." See id., ¶ 72. In addition, Nokia repeatedly urged Collision to meet Nokia's imposed deadlines which were premised on Collision's need to perform expeditiously under the parties' agreement. See id., ¶¶ 54, 61, 85, 91.

Nokia's main argument concerning its lack of intent to be bound concerns allegations reflecting that the parties anticipated executing written documents. See Nokia's Memorandum at 14. Although these statements do reflect that the parties intended to sign a written agreement, there is no allegation that Nokia ever expressed that it would not be bound until such documents were signed. See id. On the contrary, the Complaint explicitly alleges that Nokia wanted to come to a *verbal* agreement with Collision so that Collision would continue to perform on its behalf. See Complaint, ¶¶ 50-51.[1] Moreover, as set forth in detail in Collision's Opposition to Nokia's Motion to Dismiss, see Opposition, Docket #57, at 15-16, the mere fact that the parties contemplated, but never executed, a written agreement does not negate the parties' underlying, oral agreement. See, e.g., Rochester Motorsports, Inc. v. Leighton's Kawasaki, Inc., No. 2005-0233, 2006 WL 8418219, at *2 (N.H. July 25, 2006); Guy v. Starwood Hotels & Resorts Worldwide, Inc., No. CIV 03-CV-183JD, 2005 WL 2172034, at *3 (D.N.H. Sept. 7, 2005) (DiClerico, J.) ("An enforceable agreement results under New Hampshire law when the parties

---

[1] Specifically, the Complaint alleges that Nokia's Mr. Herrerias came to negotiate with Collision in New Hampshire to reach "a verbal agreement" and represented "[e]ven if we don't achieve to have everything signed on paper by then, our agreement will help to make the workshop happen." See id. Plainly, Nokia intended to be bound even absent a written agreement.

6

'manifest[ ] their intent to be bound to the essential terms of a more detailed forthcoming agreement' even if the more detailed agreement never materializes"). As a result, Collision's allegations establish that Nokia intended to be bound and this is sufficient for the claim to survive dismissal under Fed. R. Civ. P. 12(b)(6).

### 3. The Complaint Properly Alleges An Oral Or Implied Contract

The Complaint also properly alleges the existence of an oral and/or implied agreement.[2] As set forth above, the Complaint properly alleges that Nokia made a verbal offer to Collision to license technology based on specific terms and that ***Collision accepted that offer***. See Complaint, ¶¶ 62-64.

There also is no merit to Nokia's contention that the parties' terms were not suitably definite to create a verbal or implied contract. New Hampshire law is clear that the terms of a contract need only be reasonably certain to be enforceable. See Sawin v. Carr, 114 N.H. 462, 465, 323 A.2d 924, 926 (1974) ("pristine preciseness" not required); accord Restatement (Second) of Contracts § 33(1) (1981). Indeed, "[t]he terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." Id. § 33(2).

Here, the Complaint alleges that Nokia offered Collision $20 million to license Collision's technology and $3 million to perform the integration work according to Nokia's schedule. See Complaint, ¶¶ 4, 64. These allegations are sufficiently clear for this Court to determine that a breach occurred when Nokia refused to pay the amounts to which it had agreed and award damages. See Chisholm v. Ultima Nashua Indus. Corp., 150 N.H. 141, 145, 834 A.2d

---

[2] Nokia suggests in its Motion that Collision brought separate claims for breach of contract and breach of an oral or implied contract. Collision did not; the Complaint contains a single claim for breach of contract, which includes breach of an oral and/or implied contract.

7

221, 225 (2003) (rejecting that agreement was unenforceable because, "while some of the contract terms are incomplete, it is reasonably clear that [the plaintiff] agreed to work for [the defendant] in exchange for the annual salary and benefits set forth in the proposed employment contract outline"). Therefore, Collision has properly pled a claim for breach of an oral or implied contract, so this claim should survive Nokia's Motion.

> B.  **The Allegations In The Complaint Support A Claim For Breach Of The Implied Covenant of Good Faith and Fair Dealing**

Nokia argues that Collision's claim for breach of the implied covenant of good faith and fair dealing is not supported because Collision does not allege that Nokia fraudulently induced Collision to enter into the parties' contract and because, Nokia argues, Collision did not plead its claim with particularity. Again, there is no basis for these arguments.

Under New Hampshire law, a party to a contract has "a duty to refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139, 562 A.2d 187, 190–91 (1989). Collision properly pleads in its Complaint that Nokia engaged in improper conduct during the formation of the parties' agreement.

For example, Collision alleged that before the parties formed their agreement on June 6, 2017, Nokia *repeatedly* misrepresented to Collision that it had to continue working to integrate its technology with Nokia's in order to meet Nokia's deadlines and that Collision would be paid for this work. See Complaint, ¶¶ 32-34, 40, 44. Nokia's later conduct, in causing continuous delays, makes clear that Collision did not need to rush to perform. See id., ¶¶ 72-78. This is the type of false promise that the implied covenant is designed to guard against, see Centronics, 132

N.H. at 139, 562 A.2d at 190–91, and, as a result, Collision properly pled its claim for breach of the implied covenant of good faith and fair dealing.

Moreover, Collision pled its claim with more than sufficient particularity. A party meets the requirements of Fed. R. Civ. P. 9(b) where it provides "the who, what, where, and when of the allegedly misleading representation." Dumont v. Reily Foods Co., 934 F.3d 35, 38 (1st Cir. 2019) (quoting Kaufman v. CVS Caremark Corp., 836 F.3d 88, 91 (1st Cir. 2016) (internal quotations omitted). Here, Collision identifies the individuals making misrepresentations, what the misrepresentations were, where they were made and/or received, and when the misrepresentations were made. See Complaint, ¶¶ 32-34, 40, 44, 68.

As one example only, the Complaint alleges that on June 12, 2017, Stan Fry met with Tero Kola, then Head of Nokia's Radio Portfolio Management and Strategy, in Nokia's offices in Finland. See Complaint, ¶ 68. The Complaint alleges that during that meeting, Mr. Kola represented to Mr. Fry that he was surprised that the parties had not yet executed their written documents confirming their agreement and that he would work to ensure the documents would be completed. See id. Nokia's later actions—namely, not providing draft agreements for months and then materially changing the terms of those agreements—make clear that Nokia did not intend to have the parties' agreed-upon documents finalized or signed. See id., ¶¶ 72-78. The Complaint contains many more examples of Nokia's misrepresentations, alleged with more than sufficient particularity to meet the requirements of Rule 9(b).

### C. Collision Properly Pled Its Claim For Promissory Estoppel

Nokia argues that Collision did not properly plead a claim for promissory estoppel because, Nokia asserts, Collision did not plead detrimental reliance. Contrary to Nokia's assertion, Collision's Complaint properly pleads detrimental reliance.

9

Detrimental reliance exists where a party "relie[s] on its adversary's conduct in such a manner as to change [its] position for the worse." Mimiya Hosp., Inc. SNF v. U.S. Dep't Of Health And Human Servs., 331 F.3d 178, 182 (1st Cir. 2003) (internal quotations omitted). Here, Collision alleges that Nokia made numerous false assurances to Collision, that Collision relied on those assurances, and Nokia induced Collision to expend approximately $4 million in detrimental reliance based on those assurances. See Complaint, ¶ 83. Collision further alleges that "Collision reasonably relied upon Nokia's many statements and assurances to its detriment by materially changing its position, including by devoting all its corporate resources towards performing work for Nokia in furtherance of the parties' contractual and business relationship." See id., ¶ 92. These allegations articulate a claim for promissory estoppel, so the claim should not be dismissed at this early juncture.

### D.     Collision's Claim For Negligent/Intentional Misrepresentation Is Supported By Allegations In The Complaint

Nokia challenges Collison's claim for Negligent/Intentional Misrepresentation based on its contention that Collision did not plead detrimental reliance and its position that the economic loss doctrine bars Collision's claim. Neither position has any merit.

First, as set forth above, Collision properly pled detrimental reliance. See supra, Section II.C. As a result, Nokia's argument fails on this score.

Second, the economic loss doctrine does not apply under the circumstances of this case. On the contrary, New Hampshire case law makes clear that even where a plaintiff has claims for misrepresentation and breach of contract, the economic loss doctrine does not bar a plaintiff's claim for negligent misrepresentation claim as duplicative where the plaintiff alleges that the defendant induced the plaintiff to enter into a contract through misrepresentations. See Wyle v. Lees, 162 N.H. 406, 411-12, 33 A.3d 1187, 1191–92 (2011).

10

In the Complaint, Collision expressly alleges that Nokia induced it to enter into the agreement (and to perform under that agreement) based upon Nokia's misrepresentations, including Nokia's June 1, 2017 statement that it had approval to offer $20 million to Collision to license Collision's technology. See Complaint, ¶ 96(a). That statement apparently was false when made, but Collision relied on it in deciding to enter into the agreement with Nokia five days later. See id., ¶ 62. As a result, New Hampshire law is clear that Collision's misrepresentation claim—which is based on Nokia's false inducements to Collision to enter into the agreement—is not duplicative of the breach of contract claim and should not be dismissed.

### E. Collision Properly Pled A Claim For Quantum Meruit

Nokia argues that Collision did not plead a claim for quantum meruit because, it claims, Collision did not allege that it conferred any benefit on Nokia. This argument is belied by the well-pled allegations, referenced below, which make clear that Collision conferred numerous benefits on Nokia, including Collision's valuable intellectual property, continued performance, and exclusivity commitment.

Specifically, Collision alleges that through its assurances and representations, Nokia obtained Collision's valuable intellectual property. See Complaint, ¶ 82. This intellectual property was particularly valuable to Nokia, which had previously tried and failed to develop technology similar to that of Collision. See id., ¶ 24. Moreover, Nokia's misrepresentations and assurances caused Collision to perform work for Nokia in order to meet Nokia's prescribed milestones. See id., ¶ 44. Perhaps most importantly, Nokia also benefitted from the exclusivity commitment it obtained from Collision—a commitment that kept Collision's valuable technology out of the hands of Nokia's competitors. See id., ¶ 4. As the Complaint alleges, Nokia knew that Collision was performing this work and providing these benefits to Nokia with

the expectation of compensation, and Nokia accepted this work and gained a benefit from the work that Collision performed. See id., ¶ 106. These allegations are more than sufficient to show that Nokia derived a benefit from Collision's performance, so the claim should survive.

### F.  The Allegations In The Complaint Support A Claim For A Violation of New Hampshire RSA c. 358-A

Nokia argues that Collision cannot make out a consumer protection claim under RSA c. 358-A because, it argues, Collision has not alleged that Nokia directed activity toward Collision in New Hampshire, does not allege that Nokia directed any misconduct against Collision at all, and does not allege Nokia's conduct with particularity under Fed. R. Civ. P. 9(b). These arguments ignore the plain allegations in the Complaint, which are replete with details regarding Nokia's misconduct, misconduct that Nokia directed towards Collision in New Hampshire.

In particular, throughout the Complaint, Collision alleges that Nokia conducted negotiations with and made misrepresentations to Collision, by email and by telephone, to Collision in New Hampshire. See, e.g., Complaint, ¶ 110. Further, Collision alleged that Nokia deliberately and persistently lied to Collision to keep it on the hook, performing work and maintaining exclusivity on Nokia's behalf. See id., ¶ 82. These allegations are sufficient to support a claim for violations of under RSA c. 358-A.[3] Moreover, because Nokia directed its conduct to Collision in New Hampshire, not only during a trip that its employee made to New Hampshire (See id., ¶ 55), but also by emails and telephone calls to Collision in New Hampshire, Nokia's activities were suitably within New Hampshire to support a claim under the CPA. See Fin Brand Positioning, LLC v. Take 2 Dough Prods., Inc., No. 09-CV-405-JL, 2012 WL 27917, at **4-9 (D.N.H. Jan. 5, 2012)(Laplante, J.).

---

[3] To the extent that Nokia alleges that these are not sufficient actions to amount to a CPA violation, this becomes a question of fact that cannot be resolved short of trial. See CRMC Bethlehem, LLC v. N. Country Environ. Servs., Inc., No. 09–cv–344–JL, 2010 WL 3002025, *3.

Moreover, as set forth above, see *supra* Section II.B, Collision pled its allegations relating to Nokia's misrepresentations with sufficient particularity to meet the standards of Fed. R. Civ. P. 9(b). As a result, there is no basis to dismiss Collision's CPA claim on this ground.

### vi. Conclusion and Request for Hearing

For the foregoing reasons, Collision Communications respectfully requests that the Court deny Nokia's motion for reconsideration in its entirety. Pursuant to Local Rule 7.1(d), Collision requests a hearing on its opposition to Nokia's Motion.

Respectfully submitted,

COLLISION COMMUNICATIONS,

/s/ Tyler E. Chapman
Tyler E. Chapman, Admitted Pro Hac Vice (MA BBO # 637852) tchapman@toddweld.com
Maria Davis, Admitted Pro Hac Vice (MA BBO # 675447) mdavis@toddweld.com
Tara D. Dunn, Admitted Pro Hac Vice (MA BBO # 699329) tdunn@toddweld.com
Joseph M. Cacace (NH Bar # 266082; MA BBO # 672298) jcacace@toddweld.com
TODD & WELD LLP
One Federal Street
Boston, MA 02110
Dated:  February 19, 2021                    Tel: (617) 720-2626

### CERTIFICATE OF SERVICE

I, Tyler E. Chapman, hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Tyler E. Chapman
Dated:  February 19, 2021          Tyler E. Chapman