**NO COPY OF THIS TRANSCRIPT MAY BE MADE PRIOR TO 8-3-2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

```
* * * * * * * * * * * * * * * * * *
                                  *
COLLISION COMMUNICATIONS, INC.    *
                                  *   20-cv-949-LM
          v.                      *   April 4, 2023
                                  *   10:05 a.m.
   NOKIA CORPORATION, ET AL       *
                                  *
* * * * * * * * * * * * * * * * * *
```

TRANSCRIPT OF SCHEDULING CONFERENCE
BEFORE THE HONORABLE LANDYA B. MCCAFFERTY

APPEARANCES:

For the Plaintiff:          Steven Pepe, Esq.
                            Samuel L. Brenner, Esq.
                            Ropes & Gray, LLP

                            Brooke Lois Lovett Shilo, Esq.
                            Upton & Hatfield, LLP


For the Defendants:         David Himelfarb, Esq.
                            John M. Allen, Esq.
                            McCarter & English, LLP


Court Reporter:             Susan M. Bateman, RPR, CRR
                            Official Court Reporter
                            United States District Court
                            55 Pleasant Street
                            Concord, NH 03301
                            (603) 225-1453

```
 1                        P R O C E E D I N G S

 2              THE CLERK:  Court is in session and has for

 3   consideration a scheduling conference in Collision

 4   Communications, Inc. versus Nokia Corporation, et al., civil

 5   case number 20-cv-949-LM.

 6              THE COURT:  Good morning everybody.

 7              I am -- I know that counsel wanted to have this

 8   status conference so I scheduled it for you right away.

 9              I want to resolve two issues, and I want to

10   obviously hear from you as to what you would like to resolve.

11              I see the trial date as an issue of concern in

12   terms of timing and summary judgment litigation, and then

13   there's a motion to reopen discovery to take a deposition that

14   I want to address and resolve today.

15              Are there any other issues that you think we should

16   discuss?

17              MR. PEPE:  No, from plaintiff's perspective, your

18   Honor.

19              THE COURT:  You know what I should do is have

20   everybody introduce themselves for the record and just state

21   your name.

22              I know that Attorney, is it Pepe, is going to speak

23   for Collision and Attorney Himelfarb is going to speak for

24   Nokia?

25              MR. PEPE:  Yes.  Good morning, your Honor.
```

```
 1                  Steve Pepe of Ropes & Gray on behalf of Collision.
 2                  THE COURT:  All right.
 3                  Go ahead.
 4                  MR. HIMELFARB:  Good morning, your Honor.
 5                  David Himelfarb, like you noted, on behalf of Nokia
 6      Solutions and Networks OY.
 7                  MR. PEPE:  And I should note, your Honor, I'm
 8      joined by Sam Brenner from Ropes & Gray as well.
 9                  MR. BRENNER:  Good morning, your Honor.
10                  THE COURT:  Good morning.
11                  MR. SHILO:  And, your Honor, Brooke Shilo here as
12      local counsel for Ropes & Gray.
13                  THE COURT:  Okay.
14                  And Attorney Allen for Nokia as well.
15                  MR. ALLEN:  Good morning, your Honor.
16                  John Allen for Nokia.
17                  THE COURT:  Okay.  All right.
18                  What are some other issues, if any, that we should
19      resolve today?
20                  MR. PEPE:  Your Honor, from plaintiff's perspective
21      I think the ones that you listed are the issues that should be
22      addressed.  There's nothing additional from our perspectives.
23                  THE COURT:  Okay.
24                  And Attorney Himelfarb?
25                  MR. HIMELFARB:  Yeah, your Honor, we agree.  I
```

1  mean, by my estimation I think there are five pending motions,

2  but three of them are <u>Daubert</u> motions which you can probably

3  take on in due course.

4          I think the issue of the trial date, and then the

5  reopening of discovery, and then making sure that your Honor

6  has sufficient time to look at what ended up being a very

7  voluminous summary judgment submission in anticipation of

8  trial.

9          I think the genesis of this conference was Attorney

10 Pepe had reached out to me and said that he had a conflict and

11 was looking to extend the trial date and asked if I was open

12 to that, and I told him for my own reasons, which I can get

13 into, that I certainly was and I was going to have the same

14 conference with him.  So that was the primary reason that we

15 reached out to your Honor.

16         THE COURT:  Okay.  All right.  Well, let's resolve

17 the motion to reopen discovery, and I would like to hear

18 arguments, obviously I have read the briefs, and then we can

19 talk about the trial date.  I'm sure I will be amenable to

20 whatever counsel have both agreed on with respect to a trial

21 date that works for everybody.

22         So let's talk about this motion to reopen.

23 Discovery has closed, but Collision wants to take the

24 deposition of a Nokia employee who lives in -- or is in Poland

25 whose last name is Gajak.  And after discovery closed Nokia

1    disclosed a report, as I understand it, of one of its experts,

2    William Scally, who I believe is also the subject of one of

3    the Daubert motions, but that expert indicated that one of the

4    bases for his opinion was conversations he had with this

5    employee Gajak throughout the report, and the deadline for

6    disclosing expert reports was after that discovery deadline.

7              Collision then deposes the expert and the expert

8    confirms that he did rely on Gajak.

9              So Collision would like to depose this employee,

10   and Nokia opposes that and then says, Judge, if you do allow

11   it, we want some conditions.

12             Have I summarized that accurately?

13             MR. PEPE:  Yes, your Honor.  That's a very good

14   summary of the papers and the positions.

15             THE COURT:  Okay.  Let me do this.  Let me hear

16   argument, maybe five minutes or whatever you need really, I

17   can't imagine, five, ten minutes, and then I'll let you go

18   back and forth a bit.  Let me see if I can hear argument and

19   make a decision for you today.  If I can't, I'll try to get it

20   out as quick as possible.  I would like to keep this as much

21   on track as we can in terms of the discovery.

22             So let's go ahead and hear Collision's arguments.

23             Go ahead, Mr. Pepe.

24             MR. PEPE:  Thank you, your Honor.

25             As we stated in our papers, what we're seeking here

1  is a very limited deposition of this gentleman just with

2  respect to the conversations that he had with the expert.  We

3  don't envision it would need to be the entire day.  We're

4  willing to do a shorter deposition just to explore those

5  conversations.

6           While it is true that we were aware of this

7  particular witness during that discovery and we did in fact

8  notice his deposition as part of a larger group of individuals

9  that we identified for deposition, we declined to take his

10 deposition because during -- in the initial disclosures he was

11 not identified as somebody that Nokia was intending on relying

12 on for purposes of expert discovery or anything else.  So we

13 declined to take his deposition at that time.  Again, we have

14 a limited number of depositions.  We made that judgment call

15 not to take his deposition.

16          When we looked at the expert reports and saw that

17 the expert, Mr. Scally, relied upon a conversation with this

18 gentleman, and we deposed Mr. Scally, we tried to explore the

19 nature of that conversation with the witness in Poland, and we

20 weren't able to get the details of those conversations.

21          So we believe that it's appropriate to be able to

22 get this very limited deposition just to explore the nature of

23 those discussions between the expert and the fact witness.  We

24 don't believe that it will be burdensome, we're willing to do

25 it remotely, and we don't think this will impact at all the

1    schedule or require additional expert reports or additional

2    expert depositions.  So we perceive this as just a very

3    limited deposition and scope.

4              THE COURT:  All right.

5              Attorney Himelfarb.

6              MR. HIMELFARB:  Yeah, and so the one sort of nuance

7    or clarification to your Honor's sort of summary of these

8    disclosures is William Scally is essentially our rebuttal

9    damages expert.  And so effectively what happened was

10   Collision through its damages expert, Justin McLean, issued a

11   report, and in that report there was -- effectively they did

12   the same thing.  In other words, Mr. McLean provided opinions

13   discussing extensively that he had had discussions with Joe

14   Farkas, who was an employee of Collision and basically

15   Collision's technology guy, and based on those discussions it

16   was his view that what they call the Nokia project was sort of

17   largely done.

18             So that put us in a position where this issue that

19   they ineffectively raise after the close of fact discovery

20   about those damages being tied to discovery -- the project

21   being effectively done then prompted us to go back and have to

22   talk to our experts and say, okay, well, Mr. McLean had these

23   discussions with Mr. Farkas and Mr. Farkas says the project

24   was effectively done.  Do you, the technology counterpart for

25   Nokia, do you agree with that?  And that was sort of the

1    nature of the discussions.

2            And so it is probably not fair to say we injected

3    this issue into the case, but basically what happened was

4    Collision raised this issue in their expert report and we

5    provided a rebuttal.

6            So our view is in that context we didn't

7    affirmatively inject a new issue that in fundamental fairness

8    they have the right to go back.  They always knew that Mr.

9    Gajak was involved.  In fact, even contemporaneously Mr. Gajak

10   was somebody that they dealt with while they were negotiating

11   this.  Like Mr. Pepe said, they had previously been noticed

12   his deposition.

13           And really what's happening here is although

14   they've tried to spin this in their motion as this was an

15   issue of Nokia failing to disclose somebody, I don't think the

16   record quite bears that out.  I think the record is fairly

17   clear that Collision was aware of Mr. Gajak's role and his

18   relevance to this case all along.  They made the strategic

19   decision not to depose him during fact discovery.  They then

20   opened the door on this issue.  And then when we responded to

21   it, you know, they're now taking the position, well, you know,

22   we sort of regret our decision and would like to go back.  Our

23   view is we're finished with summary judgment.

24           We're not at this time asking to depose Joe Farkas

25   largely because we did address these issues with Mr. Farkas at

1   his deposition, as Collision could have done if they had

2   wanted to notice Mr. Gajak's deposition.  But, you know, we

3   just have the concern once you go down the road of reopening

4   discovery, who knows where that's going to lead to.  You know,

5   we've worked extensively on this case for years and we were

6   sort of hoping that we would be moved beyond that date.  And

7   given the way it played out and given the fact that it's

8   Nokia's position that we made all of the disclosures we needed

9   to make, we just don't see the need or we don't think it's

10  appropriate to reopen discovery at this time.

11          And as your Honor said, if your Honor is not

12  motivated or persuaded by those arguments, we would like to

13  definitely put very strict limits on that.  As your Honor

14  noted, Mr. Gajak is in Poland.  There's obviously a large time

15  zone difference there.

16          We would ask -- what Mr. Pepe said is they just

17  want to know the nature of his discussions with Mr. Scally.

18  That sounds like no more than an hour or two would be

19  necessary to do that.

20          THE COURT:  Attorney Pepe.

21          MR. PEPE:  Sure.  Just a couple of quick responses.

22          Our interrogatory responses made clear, and our

23  position all along was clear, that we thought and we took the

24  position that the work that was being done on the Nokia

25  project was near completion.  So this was not an issue that

1   was, you know, raised for the first time in our expert

2   reports.  I think the parties disclosed their positions with

3   respect to this project, and I think through the deposition

4   testimony and interrogatory responses it was very clear what

5   our position is.  So it wasn't raised for the first time in

6   the expert reports.

7          Nokia, like Collision, identified lots of

8   individuals during fact discovery, this gentleman being one of

9   them, but they never indicated that he would be relied upon

10  the way he was by Mr. Scally.  As a result of that, we did not

11  take his deposition.

12         We do not perceive there to be tremendous prejudice

13  here for this limited deposition simply to explore the nature

14  of those conversations between Mr. Scally and the witness.

15  And as I said, we did depose Mr. Scally on those discussions

16  and we were not able to get the nature of those details.  So

17  we're left with no choice but to try to have that limited

18  deposition of the witness.

19         And, again, we're willing to limit it, do it

20  remote, and keep it narrow and focused.  And, again, there's

21  no prejudice here by allowing that deposition to go forward in

22  our view.

23         THE COURT:  All right.  Attorney Himelfarb,

24  anything else?

25         MR. HIMELFARB:  No, your Honor.  I have nothing

1    further.

2             THE COURT:  Okay.  I think that the context that

3    you provided, Attorney Himelfarb, is definitely helpful and

4    clarifying.  But even considering that broader context, I find

5    that Collision has shown good cause to modify the scheduling

6    order for the limited purpose of taking Mr. Gajak's

7    deposition.

8             Collision's motion, which is document No. 188, to

9    reopen discovery for this limited purpose is therefore

10   granted.

11            The proposed deposition should be limited to the

12   scope of the expert opinion for which Gajak provided support,

13   and it shall be conducted remotely, assuming that's what's

14   most convenient for Mr. Gajak.

15            The time limit I think, counsel, it sounds like Mr.

16   Pepe is reasonable about that.  I think I'll just go with the

17   default time limit, and then if counsel wants to agree to a

18   strict shorter time limit, that's fine with the Court, but I'm

19   not going to impose a time limit on the deposition at this

20   point.  I'll let counsel make those arrangements.

21            Now, to address Attorney Himelfarb's other

22   concerns.  The Court does not intend to take additional

23   briefing on summary judgment on the Daubert motions in light

24   of this deposition.  If something comes out that's really

25   groundbreaking that you think would affect the disposition of

1  any of these motions, file a motion for leave to file a

2  supplemental brief, but something extraordinary has to come

3  out during the deposition to justify it.  Be prepared to

4  explain exactly why it's extraordinary.  Don't just conclude

5  that it is without telling me why.  And just because you think

6  that the expert shouldn't have relied on Mr. Gajak after

7  hearing what he has to say, I don't view that as a reason to

8  exclude the expert.  Those are usually matters for

9  cross-examination at trial as opposed to the exclusion of the

10  expert under Daubert.

11          So that resolves this motion to reopen trial date.

12          Daubert motions can be done more quickly, but

13  summary judgment is more difficult to get through given the

14  size of the record and possibly, you know, what may be a

15  lengthy opinion.

16          If we change the trial date, we'll probably need to

17  adjust some pretrial deadlines around that new trial date like

18  motions in limine, our final pretrial conference and such, but

19  I am -- have counsel agreed essentially on a trial date that

20  you wanted to propose to the Court today or would you ask for

21  a meet and confer time?  What does counsel prefer?

22          MR. PEPE:  So perhaps I should give some context,

23  your Honor, about how the trial date issue came up.

24          I could speak from Collision's perspective and then

25  Mr. Himelfarb could speak from defendant's perspective, if

1    that would make some sense.  I think context would be helpful

2    here for your Honor.

3            THE COURT:  Go ahead.

4            MR. PEPE:  Counsel for both parties, Mr. Himelfarb

5    and I, have had a number of conversations about the trial date

6    over the last few months.  We've been very open and

7    transparent with each other, and there's been several

8    developments on both sides that we wanted to bring to the

9    Court's attention.

10           The first is my own.  I recently learned that my

11   daughter's high school graduation is on the second day of

12   trial.  Trial is June 21, which is a Wednesday.  June 22nd is

13   her graduation date.  I could certainly miss it, but she is my

14   middle child and she certainly lives up to that title, and if

15   there's any flexibility with that trial date, I would

16   definitely like to be there.

17           We could start trial on the Friday and skip that

18   Thursday date.  Any flexibility the Court would have with that

19   trial date would be much appreciated.

20           If the Court decides that we should move the June

21   trial date, we've taken a look at the calendar from July to

22   October.  We can make any of those -- Collision can make any

23   of those trial dates work with the preference being July, then

24   September, then October.  In that order.  That's from our

25   perspective where we stand with the trial date.

1          I know Mr. Himelfarb has some context from the

2    Nokia side.

3          THE COURT:  All right.

4          Go ahead, Attorney Himelfarb.

5          MR. HIMELFARB:  Yeah, your Honor, so when Mr. Pepe

6    reached out to me, I told him I had been meaning to have the

7    same discussion with him.

8          Interestingly, the timing for today's hearing was a

9    little bit backwards in that I happen to have a medical

10   appointment at 1 o'clock today where I find out if and when

11   I'm going to be able to have a surgery that I need.  I

12   anticipate that I will have surgery probably in late April,

13   early May.  I don't know exactly what it's going to be, but it

14   is possible that if I do have sort of the procedure that they

15   call the Whipple procedure, my doctors tell me there could be

16   up to a six-week recovery time for that.

17         So I had been -- and I just want to be frank with

18   the Court.  I don't know whether I will have that or not, I

19   hopefully will know more about that later in the day, but for

20   that reason I had been hoping to push off the trial date.  If

21   I have a surgery in, you know, late April, May, having a trial

22   June 21 might be difficult for me.

23         Mr. Pepe reached out to me.  He had looked at the

24   Court's calendar, and he said that there were four dates that

25   they were amenable to.  One was July 18th, one was August

1    15th, one was September 19th, and one was October 17th.

2            Unfortunately, with my witnesses the August 15th

3    date didn't work, but the dates that we are available -- and

4    with order of preference would be, number one, the October

5    17th date, our second choice would be the September 19th date,

6    and then our third choice would be the July 18th date.

7            So those were the discussions we had.  I understand

8    we all agree that, you know -- or at least the parties agree

9    that we would like to ask the Court to move the trial date.

10   We agree on those dates.  We just have a different order of

11   preference as to which date we should reschedule trial to.

12           THE COURT:  Okay.  And is the October 17 date

13   chosen because it would give you the maximum time to recover?

14           MR. HIMELFARB:  Yes, your Honor.

15           THE COURT:  If in fact you have this surgery.

16           MR. HIMELFARB:  Yeah.

17           THE COURT:  All right.  Well, I am going to move

18   the trial date then to accommodate those issues for Attorney

19   Himelfarb.  We'll also accommodate your middle child's

20   graduation.

21           Let's move the trial then to October 17, and

22   obviously I know a little bit about this procedure and I hope

23   if you have it, it is successful.

24           So anything further to accomplish today?

25           MR. HIMELFARB:  No, your Honor.

1        As your Honor mentioned, we'll likely have to look
2   at the schedule and see what else needs to be tinkered with,
3   but thank you very much, your Honor.  That was our main issue.
4        THE COURT:  Okay.  Well, why don't I have you two
5   meet and confer and propose other dates.  I don't know how
6   many need to be changed or you would like to be changed, but
7   I'll let you propose that.  As long as it's assented to, I'm
8   sure that I will just grant that.
9        MR. PEPE:  Your Honor, there is one other point
10  that I would like to make the Court aware of, if I may.
11       My partner, Mr. Brenner, has been recently
12  diagnosed with stage 4 cancer himself, and we wanted to bring
13  that to the Court's attention.
14       Mr. Brenner has been running the case day-to-day,
15  has taken many of the depositions, and he would very much like
16  to be part of the trial team.
17       Obviously both sides here are dealing with
18  unpredictable medical situations with different timelines, and
19  it's very unfortunate for both Mr. Himelfarb and Mr. Brenner.
20       My heart goes out to both of them.  I've talked to
21  Mr. Himelfarb at length about his condition, and I've talked
22  to obviously Mr. Brenner about his.
23       We on the Collision side are making plans and using
24  our best efforts to make sure that whatever trial date is set,
25  and it sounds like it's October 17, that we will be able to

1   move forward with that.

2            Mr. Brenner would very much like to be part of

3   trial, we're planning for that, but if he can't, we have a

4   backup lawyer that will be coming in to replace him.  We

5   believe that -- we're making these plans, and we think that

6   doing that is in the interests of both parties.

7            The case has been pending for a long time.

8   Obviously counsel's health is paramount, but we want to make

9   sure that we're trying to plan on both sides that there's no

10   prejudice if the trial date gets pushed out for some

11   indefinite term.  Obviously health comes first, but we're

12   trying to work to ensure that if Mr. Brenner can't make the

13   trial date, that he'll have a backup lawyer that can step in

14   and take his responsibilities for trial.

15            So I wanted to make the Court aware of our

16   situation on our side.  And, again, it's unpredictable and

17   uncertain.  We don't anticipate that there will be any other

18   issues with the trial date.  We just wanted to make the Court

19   aware.

20            THE COURT:  All right.

21            MR. BRENNER:  Your Honor, I think Mr. Pepe is

22   loathe to say certain things.

23            My cancer is terminal and uncurable, unfortunately,

24   but it is unclear how long I will have, somewhere in the

25   nature of between two years and ten years, but nobody will

1    say.  Nobody can say.  I think Mr. Himelfarb is familiar with

2    this uncertain world.

3              I would very much like to be a part of this trial.

4    I am planning to continue working, quite frankly, while

5    possible.

6              So I'm hoping that the trial happens in general

7    terms sooner rather than later, and October sounds -- I

8    understand that date and that sounds like a doable date from

9    my perspective, for what it's worth, but that is pushing some

10   of my concerns.

11             THE COURT:  Okay.

12             MR. HIMELFARB:  Your Honor, if I may, this hearing

13   is difficult.  I'll refer to him as -- Sam's a friend of mine,

14   we worship at the same place, and I just want to be on record

15   as saying whatever we need to do by way of adjusting up or

16   down or whatever to make sure we accommodate everybody's

17   needs, I'm a hundred percent supportive of that.

18             This has been a very crazy and difficult time for

19   everybody, and I really do, Sam knows, wish him all the best.

20   I'm sure we can work something out whatever we need to do.  It

21   sounds like October is going to work for everybody, but these

22   are the times where as a community we definitely need to come

23   together and support each other.

24             MR. PEPE:  I should say, your Honor, I feel like

25   Attorney Himelfarb has been supportive of us.  I feel we've

1    been supportive of him.  And as I said upfront, we've had some

2    very open and frank and somewhat difficult conversations

3    between all of us.

4              I will say that in all my years of practice this is

5    some of the most troubling discussions I've had because family

6    and health and your life comes first and everything else seems

7    so less important, and that's what makes these conversations

8    that much more difficult on both sides.

9              THE COURT:  Well, thank you all for sharing those

10   details.

11             I'm sorry, Mr. Brenner.  I have a close friend

12   right now who's going through a very similar diagnosis.

13             Here's what I would tell you.  I think based on

14   everything I've heard that, you know, if something comes up

15   for Mr. Brenner where he would be better moving that trial

16   date, and Attorney Himelfarb, I can't imagine anybody probably

17   more understanding of that.

18             I'm guessing that the parties here can just work

19   these issues out and know that I will support moving that

20   trial date for someone's health reasons every time.

21             So I think if you go with that assumption, I think

22   meeting and conferring and just saying, Judge, we need to move

23   it -- even if you want to move it -- if you decide after your

24   1 o'clock conversation today, Attorney Himelfarb, that you

25   want to actually move it back to September 19 for whatever

1    reason or Attorney Brenner weighs in and says, hey, can't we

2    do it just a little bit earlier, if you just file a motion,

3    it's assented to, you don't have to necessarily -- you can

4    just say we had a meet and confer for reasons having to do

5    with counsel's situations, and I'll know what you're talking

6    about.  I will grant that motion.

7            So if you can meet and confer -- and just

8    understand that I am going to -- I'm going to do what is going

9    to be best for the individual attorney's health, so use that

10   as your assumption, and it sounds as though you already are

11   trying to help each other.

12           I miss being part of the legal profession when I

13   have a conference like this and, you know, you go

14   head-to-head.  I was a public defender.  So it was prosecutors

15   on the other side.  You get to know the best and you get to

16   know the worst when you do a trial and you have litigation.

17   You agree to disagree and you get along and you work through

18   things, and I can't imagine something more profound than what

19   all of you are dealing with.

20           So just know that your health is the most important

21   thing here and I view it that way, and whatever you agree on

22   I'm -- obviously you're both focused -- all of you are focused

23   on your client and what's best for your client, but if you

24   tell me you've reached an agreement that something has to

25   happen on a certain date, that's when it's going to happen,

1   okay?

2           MR. PEPE:  Thank you, your Honor.

3           MR. HIMELFARB:  Thank you, your Honor.

4           MR. BRENNER:  Thank you, your Honor.

5           THE COURT:  Okay.  All right.

6           My best to everybody.

7           MR. PEPE:  Thank you.

8           MR. BRENNER:  Thank you.

9           (Conclusion of hearing at 10:35 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                           C E R T I F I C A T E

2

3

4          I, Susan M. Bateman, do hereby certify that the

5     foregoing transcript is a true and accurate transcription of

6     the within proceedings to the best of my knowledge, skill,

7     ability and belief.

8

9

10    Submitted:   5-5-23        /s/    Susan M. Bateman
                                 SUSAN M. BATEMAN, RPR, CRR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25