UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Collision Communications, Inc.

    v.                                              Civil No. 20-cv-949-LM
                                                      Opinion No. 2023 DNH 110 P

Nokia Solutions and Networks OY

## O R D E R

Plaintiff Collision Communications, Inc., brings claims against defendant Nokia Solutions and Networks OY for breach of contract and breach of the implied covenant of good faith and fair dealing. The parties' dispute arises out of Collision and Nokia's negotiations toward a commercial technology partnership. In general, Collision asserts that in June 2017 the parties formed a binding, $23 million oral contract for Nokia to use Collision's technology, which Nokia breached. Collision also brings claims for promissory estoppel and quantum meruit based on the same series of events.

Nokia moves to exclude the expert opinions of Justin McLean (doc. no. 161) and Dr. Istvan Jonyer (doc. no. 162), who are, respectively, Collision's designated damages and software engineering experts. Collision moves (doc. no. 157) to exclude portions of opinions proffered by Nokia's designated damages expert, William Scally.

Nokia's motions to exclude Dr. Jonyer's opinions and McLean's opinions are denied in part and denied without prejudice in part. Collision's motion to exclude portions of Scally's opinions is granted.

## STANDARD OF REVIEW

Federal Rule of Evidence 702 is "[t]he touchstone for the admission of expert testimony in federal court litigation . . . ." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Under that rule, an expert witness may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (effective until December 1, 2023).[1] The party who is the proponent of the expert opinion bears the burden of showing that it is admissible by a preponderance of the evidence. See Martinez v. United States, 33 F.4th 20, 24 (1st Cir. 2022); United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013); see also Fed. R. Evid. 702 advisory committee's note to 2023 amendment (explaining that 2023 changes "clarify and emphasize" that preponderance of the evidence standard applies under Rule 702).

The trial judge serves as a "gatekeeper." See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993). When an adverse party lodges an objection

---

[1] On December 1, 2023, among other changes, the present language of Rule 702(d) will be amended and replaced with "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." This change "emphasize[s] that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology," but does not impose "any new, specific procedures." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. The result here is the same regardless of whether the pre- or post- 2023 amendment language is applied.

to expert testimony under Rule 702, the court must determine whether the testimony satisfies the relevant foundational requirements. See id. "There is an important difference between what is unreliable support and what a trier of fact may conclude is insufficient support for an expert's conclusion." Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15 (1st Cir. 2011). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.[2]

## BACKGROUND

The background facts of this case are more extensively set out in the court's recent order on Nokia's motion for summary judgment. Doc. no. 208. In short, Collision is a New Hampshire-based company that developed a software algorithm which helps with the processing of cellular signals. Nokia produces, among other products, base stations, which are devices that collect, process, and disseminate cellular signals. This case relates to the alleged formation of a contract between Collision and Nokia to integrate and license Collision's technology for use in Nokia's base station to enhance the base station's performance.

---

[2] It does not appear that either party requested a hearing on the motions. As there is no novel issue here, the court did not deem a hearing necessary to decide the motions. There is no prescribed procedure for addressing Daubert motions. The First Circuit has held that a hearing is not required to determine the reliability of a proffered expert opinion so long as no novel issue is raised. See Gonzalez-Arroyo v. Drs.' Ctr. Hosp. Bayamon, Inc., 54 F.4th 7, 15 (1st Cir. 2022) (citing United States v. Phillipos, 849 F.3d 464, 471 (1st Cir. 2017); United States v. Pena, 586 F.3d 105, 111 n.4 (1st Cir. 2009)).

Collision asserts that as part of its performance under the alleged contract it began implementing its software onto the hardware platform used by Nokia's base station. Collision undertook this work over a period of several months until the parties' discussions broke down. Nokia denies that any contract was formed, that it ever made any binding promises, or that it owes Collision any damages. The court granted in part and denied in part a motion for summary judgment filed by Nokia. Collision's remaining claims in this case are for breach of contract; breach of the implied covenant of good faith and fair dealing; promissory estoppel; and quantum meruit.

## DISCUSSION

Nokia moves to exclude two of Collision's proffered expert witnesses: its software expert, Dr. Istvan Jonyer, and its damages expert, Justin McLean. Collision moves to exclude testimony from Nokia's damages expert, William Scally. The court first addresses Nokia's separate challenges to Dr. Jonyer's and McLean's opinions, and then considers Collision's challenges to Scally.

I.   <u>Nokia's motion to exclude Dr. Jonyer</u>

In support of its claims, Collision retained Dr. Jonyer to opine about the status or progress of Collision's work integrating its technology with Nokia's base stations; the amount of engineer time Collision dedicated to the integration project; and Collision's engineering team and process in relation to industry standards. Nokia moves to exclude these opinions for assorted reasons.

4

      A.    <u>Whether Dr. Jonyer's opinion that the integration project was nearing completion should be excluded</u>

To start, Nokia moves to exclude Dr. Jonyer's opinion that the integration project was nearing completion (1) because Dr. Jonyer is unqualified to give such an opinion and (2) because Dr. Jonyer based his opinion "almost exclusively" on information provided to him by Collision's chief technology officer, Joe Farkas. Collision objects and responds that "Dr. Jonyer's education credentials and two-decade career in the field of software development qualify him to provide his expert opinion on the status of Collision's software development project." Doc. no. 173 at 13. Collision observes that "Dr. Jonyer has specific experience with porting and integration projects—at least three separate times—including on cellular technology projects." <u>Id.</u>

      1.    <u>Dr. Jonyer is qualified to opine about the progress of the integration project.</u>

Nokia's objection is premised on Dr. Jonyer's lack of experience specific to integration (or "porting") of software to base stations. Dr. Jonyer, however, disclosed sufficient education and experience in computer science and software development to qualify him to opine on the status of the integration project. Dr. Jonyer does not require extensive experience with cellular technology to opine about the status of the integration project because such opinion relates to Collision's software development process. This process involves taking the existing algorithm and the accompanying software optimizations and integrating them with the computer hardware used by Nokia's base station. The opinion does not pertain to inventing new cellular technology or the efficacy of Collision's technology. In other

5

words, Dr. Jonyer's opinion about the project's status is based primarily on his experience in software engineering and not the intricacies of cellular technology. Collision has shown by a preponderance of the evidence that Dr. Jonyer is qualified to render an opinion about the project's status. Whether Dr. Jonyer's credibility is affected by the extent or recency of his experience in a particular professional subfield is a matter properly reserved for the jury.

    2.    <u>Dr. Jonyer's opinion is not inadmissible because he relied in part on information provided to him by Joe Farkas.</u>

Collision has also shown by a preponderance of the evidence that Dr. Jonyer's opinion as to the project's status is sufficiently reliable. An expert may rely on hearsay evidence so long as he "form[s] his own opinions by applying his extensive experience and a reliable methodology to the inadmissible materials." Tr. of Bos. Univ. v. Everlight Elecs. Co., 141 F. Supp. 3d 147, 148-49 (D. Mass. 2015) (quoting United States v. Mejia, 545 F.3d 179, 197 (2d Cir. 2008), and citing Int'l Adhesive Coating Co., Inc. v. Bolton Emerson Intern., Inc., 851 F.2d 540, 545 (1st Cir. 1988)). An expert thus cannot "parrot" or summarize the out-of-court statements of others. Id. (citing United States v. Brownlee, 744 F.3d 479, 482 (7th Cir. 2014)); United States v. Luna, 649 F.3d 91, 105 (1st Cir. 2011) ("[T]he entirety of [the expert's] testimony cannot be the mere repetition of 'the out-of-court statements of others.'"); United States v. Cormier, 468 F.3d 63, 73 (1st Cir. 2006).

Contrary to Nokia's argument, Dr. Jonyer's does not merely repeat or "parrot" Farkas's statements as to the status of the integration project. In his expert report, Dr. Jonyer explained that, in addition to speaking with Farkas, he

6

examined Collision's records about the progress on the project and analyzed the type of modifications that Collision's engineers made to the project's source code as the project progressed. Applying his experience in the field as both a programmer and manager of software engineering projects, Dr. Jonyer's opinion was that the project was nearing completion, meaning more specifically that the project had reached a point where Collision needed to test the software "to make sure that it integrated properly with" Nokia's base station. See also doc. no. 162-3 at 19 ("[W]hat remains is ensuring that once these implemented technologies or ported technologies are tested on the [base station], they work as expected and work in conjunction with Nokia's software."). Dr. Jonyer's opinion about the progress of the project is based on all the information he gathered, including – but not limited to – Farkas's statements. As Dr. Jonyer stated in his deposition, rather than taking Farkas's word about the progress of the project, "the data was supporting [Farkas's] sentiment." Doc. no. 162-3 at 18. To the extent Nokia wishes to argue that Dr. Jonyer incorrectly weighed certain sources of information over others in reaching his opinion, it is a matter for cross-examination and presentation of contrary evidence, not exclusion.

> B. <u>Whether Dr. Jonyer's opinion about the amount of time Collision engineers spent working on the integration project is unreliable.</u>

Next, Nokia contends that Dr. Jonyer's opinion about the time Collision engineers spent working on the integration project is unreliable because Dr. Jonyer based his opinion on incomplete data from time-tracking software known as "Jira." Collision responds that Nokia mischaracterizes Dr. Jonyer's opinion, as he did not

7

opine about the precise amount of time that Collision's engineers spent working on the integration project nor did he rely solely on the Jira time-tracking logs. Rather, Collision asserts that Dr. Jonyer only used the Jira time-tracking logs to help him obtain a "rough understanding" of the relative amount of time that Collision was working on different projects. To form his opinion, Dr. Jonyer also relied on Collision's source code repositories and version control records, issue-tracking data, deposition testimony of witnesses, and discussions with Farkas.

As noted above, to be admissible an expert opinion must be, inter alia, "the product of reliable principles and methods." Fed. R. Evid. 702; United States v. Jackson, 58 F.4th 541, 551 (1st Cir. 2023). This means the conclusions must be rendered in a "scientifically sound" and "methodologically reliable fashion." Gonzalez-Arroyo, 54 F.4th at 14 . But the court must not conflate an opinion that may rely on weak factual footing with an opinion that is "unreliable," because the former is admissible while the latter is not. See, e.g., id. at 14 (affirming district court's exclusion of expert who based opinions on "assumptions" about records but did not actually review the pertinent records); Jackson, 58 F.4th at 551 –52 (affirming district court's admission of expert who supported opinion with non-specific references to books, periodicals, online research, databases, and notes compiled by others); see also Fed. R. Evid. 702 advisory committee notes to 2023 amendments (explaining that the standard "does not permit the expert to make claims that are unsupported by the expert's basis and methodology"). An unreliable opinion is based on the expert's ipse dixit, meaning the expert's unsupported

assertions. An opinion with a weak or questionable factual footing is admissible because despite its arguable shortcomings it still has some factual footing. See Gonzalez-Arroyo, 54 F.4th at 14.

The question of reliability or support goes to the expert's process for reaching his opinion and not the conclusions themselves. See id. Still, however, the court must consider the expert's conclusions to check that there is not "too great an analytical gap between the data" and the conclusion. See id. But the court cannot invent these gaps or widen them. See id.; Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). In other words, an expert opinion is not inadmissible simply because the court or a party's lawyer can pose sensible questions challenging whether the expert's conclusions follow from the support he or she provided. See Milward, 639 F.3d at 23; see also Fed. R. Evid. 702 advisory committee notes to 2023 amendments (stating that the court is not required "to nitpick an expert's opinion in order to reach a perfect expression of what the basis and methodology can support" and observing that "[t]he Rule 104(a) standard does not require perfection").

Dr. Jonyer's conclusions about the amount of time Collision spent working on the integration project are sufficiently reliable to be admitted. Dr. Jonyer stated in his expert report that he relied on more than just the incomplete time log data. Indeed, Dr. Jonyer acknowledged in his expert report that it would be "improper to treat the time logs as a definitive snapshot of every hour worked by every Collision employee," so he duly considered other evidence. Doc. no. 162-5 at 6 (Dr. Jonyer supplemental opinion).

Specifically, in addition to the logs, Dr. Jonyer asserts that he analyzed Collision's records of each engineer's contributions to the integration project's source code and considered Collision's records about its progress on the integration project, which were tracked by the Jira software in addition to the time logs.[3] Dr. Jonyer states that he also considered deposition testimony transcripts and information obtained from Joe Farkas. Collision has shown by a preponderance of the evidence that all this information – considered together by a person with qualifications like those Dr. Jonyer possesses – can logically provide support to an opinion about the amount of work Collision put into the integration project.

Dr. Jonyer's opinion is not unreliable because there may be some inherent uncertainty in Dr. Jonyer's conclusion considering that some of the information he relied on was incomplete.[4] Nor is Dr. Jonyer's opinion unreliable because Nokia can identify arguments for why Dr. Jonyer's opinion could be incorrect. To exclude an expert opinion only because an argument against the opinion can be identified exceeds the court's "gatekeeper" role and invades the jury's right to evaluate the

---

[3] Doc. no. 162-4 at 68 ("Jira can be used for both time tracking and issue tracking, and Collision used Jira for both of these purposes. Time tracking and issues tracking are both organized into projects, which can be cross-referenced. Issue tracking is done by opening tickets and associating them with a work unit, which could be New Features, Improvements, and Bugs (and other custom created issue types), which can be organized into 'buckets' called Epics. Tasks can also have sub-tasks.").

[4] In his deposition, Dr. Jonyer readily acknowledged that there is uncertainty in his opinions. Cf. Fed. R. Evid. 702 advisory committee notes to 2023 amendments ("Forensic experts should avoid assertions of absolute or one hundred percent certainty—or to a reasonable degree of scientific certainty—if the methodology is subjective and thus potentially subject to error.").

opinion and Nokia's criticisms for itself. See, e.g., Milward, 639 F.3d at 23. Indeed, Nokia has disclosed a competing expert who reached a different opinion about the amount of time Collision's engineers worked on the integration project using much of the same information. See doc. nos. 173-8 (Giulio Amodeo expert opinion stating that he relied on "the documents, source code material, JIRA time logs, and related information . . . ."); 162-5 at 6 (Dr. Jonyer supplemental opinion explaining disagreements with Amodeo's contrary opinion). It is up to the parties to present their competing arguments for and against the other's opinion to the jury, and for the jury to decide which opinion is superior by assigning weight and credibility to the expert testimony.

Nokia's motion to exclude Dr. Jonyer's opinion in this respect is denied.

C. Relevance of Dr. Jonyer's opinion

Lastly, Nokia contends that Dr. Jonyer's opinions about the adequacy of Collision's engineering process, its source code, and its engineering team with reference to industry standards are irrelevant and would not help the trier of fact. Collision responds that these opinions are relevant to its claims for damages based on promissory estoppel and quantum meruit, for which Collision must establish an entitlement to damages based on the work it performed.[5] Collision also contends that Nokia will argue that Collision had not completed much of the integration project so Dr. Jonyer will rebut that argument.

---

[5] Collision also contends that the opinions are relevant to its claim under the New Hampshire Consumer Protection Act, RSA 358-A, but the court has now granted summary judgment in Nokia's favor as to that claim.

11

Assuming that Collision's representations about the issues for trial are accurate, the court finds that Dr. Jonyer's opinions on these subjects would be relevant and helpful to the trier of fact. Nokia's motion is denied without prejudice. This ruling is in limine, so Nokia may renew its objection if the pretrial or trial issues unfold in such a way that Dr. Jonyer's opinions become, or are revealed to be, irrelevant or unhelpful to the trier of fact.

II.  Motion to exclude McLean's opinions

Nokia also moves to exclude McLean's opinions, which, generally stated, are that Collision suffered approximately $23 million in expectation damages and $1.3 or $1.5 million in reliance damages[6] and that Collision is entitled to various amounts in prejudgment interest depending on the nature of damages awarded and whether New Hampshire or Delaware statutory rates apply. Nokia contends that McLean's calculations are unreliable because he relied on Dr. Jonyer's opinion and because he added an "unsupported claim for delay damages." Nokia also contends that McLean's opinion about the amount of prejudgment interest is a matter for the court to determine, not the jury.

---

[6] McLean calculated reliance damages, which he and the parties also sometimes refer to as "cost-based performance damages," as a potential alternative to expectation damages.

12

A. Whether McLean's damages calculations are unreliable because they rely on Dr. Jonyer's calculations about the amount of time Collision's engineers worked on the integration project

First, Nokia argues that the court should exclude McLean's damages calculations because he relies on Dr. Jonyer's unreliable calculations about the amount of time Collision spent working on the integration project. Nokia's argument is premised on the court excluding Dr. Jonyer's opinion on the amount of Collision time spent working on the project. Because the court has denied Nokia's motion to exclude that opinion, Nokia's motion as to McLean is denied in this respect as well.

B. Whether McLean's opinions are unreliable because he added "an unsupported claim for delay damages" or because he overstated the amount of integration work that Collision actually performed

Nokia also asserts that Collision cannot recover damages after November 2017 because Collision was – at least by that time – "on notice that Nokia was not moving forward" with the alleged June 6, 2017 oral contract. Doc. no. 161-1 at 7. Nokia argues that McLean's opinions that Collision accrued damages after that time are thus improper.[7] Nokia also contends that McLean lacked a sufficient basis

---

[7] Nokia also contends that Collision did not allege a "theory of 'delay damages'" in its complaint. This argument lacks merit and warrants minimal discussion. Collision asked for damages flowing from the alleged breach of contract and "detrimental and consequential damages." Doc. no. 54 ¶ 9. In the context of this case, the claimed "delay damages" – as Nokia calls them – are one piece of ordinary consequential damages. See Martin v. Phillips, 122 N.H. 34, 37 (1982) (characterizing "other damages attributable to delays, expenses, and inconvenience" as "consequential damages"). Beyond its allegations seeking damages for the conduct underlying its various causes of action, Collision was not required to further allege a specific theory of "delay damages" in its complaint. See Skinner v. Switzer, 562 U.S.

to assume that Nokia caused delays in the integration project's progress or to assume that the integration project was 75% completed as of October 2018.

First, Nokia's argument that McLean cannot opine about damages accruing after November 2017 relies on the incorrect premise that the court has ruled that damages accruing after November 2017 are invalid as a matter of law. The court has made no such ruling. Nokia did not move to limit Collision to damages accrued prior to November 2017 in its motion for summary judgment. And to limit Collision as such now would be to prejudge the evidence before any has been submitted at trial.

Second, Nokia's argument that McLean provides no factual basis "for his assumption that Nokia engaged in conduct that caused delays" likewise fails. Doc. no. 161-1 at 9. As Nokia itself observes, McLean relied on facts indicating that Nokia failed to provide a base station that Collision could have used to complete the integration work more efficiently. Similarly, Nokia's argument that McLean could not rely on Farkas's view about how much of the integration work was completed fails because Farkas, as Collision's chief technological officer and apparent manager of the integration project, would have personal knowledge about Collision's progress. Nokia challenges whether these underlying facts are accurate, but

---

521, 530 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."). Furthermore, Nokia did not develop, and therefore waived, any argument that, in this case, the claimed "delay damages" are special damages which must be specifically stated per Federal Rule of Civil Procedure 9(g).

14

arguments about whether to accept the evidence underlying McLean's opinions are more appropriately directed to the jury. Nokia's motion to exclude McLean's expert testimony is denied in this respect.[8]

      C.    <u>Whether testimony about the amount of prejudgment interest will aid the trier of fact in determining an issue in dispute</u>

Lastly, Nokia argues that McLean should not be permitted to opine about the amount of prejudgment interest because that it is a matter dealt with after trial and calculated by the court, not the jury. This issue appears to be moot, but the parties' briefs do not fully meet each other on the point. It is unclear whether Collision concedes that McLean's testimony about prejudgment interest should be heard outside the jury's presence and whether Nokia agrees to that concession. The parties shall meet and discuss this matter prior to the pretrial conference and resolve it among themselves. If the parties are unable to come to a resolution, the court will discuss the matter at the final pretrial conference. Nokia's motion is denied without prejudice in this respect.

III.    <u>Motion to exclude Scally's opinions</u>

Lastly, Collision moves to exclude certain portions of the opinion of Nokia's designated damages expert, William Scally. Specifically, Collison argues that Scally plans to opine about whether Nokia and Collision formed a legally binding oral contract, as he criticizes Collision's damages expert (McLean) for assuming that

---

[8] Nokia also makes a conclusory and undeveloped assertion that McLean's calculation of damages is unreliable. Such undeveloped argument is insufficient to raise the matter for the court's consideration and is therefore waived.

15

such contract existed. Nokia responds that Scally will not opine that "there was not an oral agreement formed between the parties" but contends that Scally should be permitted to "comment" that "there is overwhelming record evidence" that no oral agreement was formed. Doc. no. 174 at 1, 4. Nokia asserts that Scally should be allowed to "testify that McLean's analysis falls short of what is expected of damages experts by uncritically adopting an assumption that is clearly contradicted by the record." Id. at 1.

The court agrees with Collision that this is an improper subject for Scally's testimony. Scally cannot opine about what "is expected of damages experts" as that is the court's function as gatekeeper and then the jury's function as the ultimate finder of fact. Furthermore, opining that McLean's damages analysis is flawed because the existence of an oral agreement "is clearly contradicted by the record" is no different than opining that "there was not an oral agreement formed by the parties." Said differently, Scally's "comment on the record evidence" that no oral agreement existed is "a legal opinion," which is inadmissible. Doc. no. 174 at 5.

Of course, Scally may set forth what he has assumed the facts will show as the basis for his opinion, just as McLean may set out his own assumptions of the same. Further, Scally may criticize McLean's opinion if he believes McLean failed to address certain relevant facts in arriving at his opinion about damages. But McLean neither professes expertise about, nor renders an opinion on, whether an oral agreement existed, nor could he. Thus, it would be improper to permit Scally to criticize McLean for assuming that an oral agreement was formed.

## CONCLUSION

Collision's motion to exclude portions of Scally's planned expert testimony (doc. no. 157) is granted. Nokia's motions to exclude Dr. Jonyer's testimony (doc. no. 162) and McLean's testimony (doc. no. 161) are denied in part and denied without prejudice in part.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 31, 2023

cc:  Counsel of Record