UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Collision Communications, Inc.

v.

Civil No. 20-cv-949-LM
Opinion No. 2024 DNH 011 P

Nokia Solutions and Networks OY

**O R D E R**

Collision Communications, Inc. ("Collision") brings this action against Nokia Solutions and Networks OY ("Nokia") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Trial is scheduled to begin on February 21, 2024. The parties filed numerous motions in limine in advance of trial. See doc. nos. 217-18, 221-32. The court issued oral rulings on almost all the parties' motions at the final pretrial conference on February 8. The court took doc. no. 222 under advisement at the hearing, however. In that motion, Collision seeks to preclude Nokia from relying on the duty to mitigate as an affirmative defense at trial because Nokia failed to plead the duty to mitigate in its answer.

For the following reasons, the court grants in part and denies in part doc. no. 222.

**BACKGROUND**

This case's factual background is more fully set forth in the court's order on Nokia's motion for summary judgment. See doc. no. 208. In summary, Collision

developed technology to improve cellular network performance. Nokia produces cellular base stations, which cellular network operators use to provide cellular service to customers. Collision and Nokia were negotiating toward an agreement to license Collision's technology for use in Nokia's base station. Collision asserts that the parties formed a binding, $23 million oral contract for Nokia to use Collision's technology, which Nokia breached. Nokia asserts that the parties' discussions were preliminary and that no binding agreement was ever reached.

## DISCUSSION

Collision now moves to preclude Nokia from offering evidence, testimony, or argument regarding the affirmative defense of the duty to mitigate because Nokia failed to plead the duty to mitigate in its answer.

Federal Rule of Civil Procedure 8(c) requires the answering party to "affirmatively state any avoidance or affirmative defense." Although Rule 8(c) lists numerous affirmative defenses which must be pled, the duty to mitigate is not one of them. See Fed. R. Civ. P. 8(c). "Most federal courts, however, regard the failure to mitigate as an affirmative defense under Rule 8(c)'s catchall clause which provides for 'any other matter constituting an avoidance or affirmative defense.'" Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1286 (11th Cir. 2000) (collecting cases). The First Circuit has held that "[f]ailure to mitigate is an affirmative defense as a matter of federal procedural law," but it has not resolved whether a court sitting in diversity applies state or federal law to determine whether failure to mitigate is an affirmative defense for purposes of Rule 8(c). Conjugal P'ship v. Conjugal P'ship, 22

F.3d 391, 400 (1st Cir. 1994); see also Cardala-Sanchez v. Albizu, Civ. No. 08-1819 (JAF), 2009 WL 4015652, at *1 (D.P.R. Nov. 12, 2009) ("[I]t is unclear whether trial courts in the First Circuit must look to state law to determine whether a defense that is not enumerated in Federal Rule of Civil Procedure 8(c) will be treated as an affirmative defense.").

Under New Hampshire law, "[t]he defendant bears the burden of proving that the plaintiff failed to mitigate damages." Carbone v. Tierney, 151 N.H. 521, 529 (2004). While this would appear to suggest that the failure to mitigate is an affirmative defense which must be pled under New Hampshire law, see Sayre v. Musicland Grp., Inc., 850 F.2d 350, 354 (8th Cir. 1988), the New Hampshire Supreme Court seemingly held otherwise in Anglin v. Kleeman, 140 N.H. 257, 262-63 (1995). In Anglin, the Supreme Court affirmed a trial court's decision to instruct the jury on "the doctrine of avoidable consequences" despite the fact that the defendant failed to raise this doctrine or the duty to mitigate prior to trial. Id. at 263. The court characterized the doctrine of avoidable consequences as "a specific type of mitigation" which "states that a party cannot recover damages flowing from consequences which the party could reasonably have avoided." Id. (quotation omitted). The court held that the doctrine of avoidable consequences "is not an affirmative defense that must be specially pleaded." Id.

While Anglin technically concerned the doctrine of avoidable consequences, this doctrine "is the tort formulation for mitigation of damages." 22 Am. Jur. 2d Damages § 346 n.5 (Jan. 2024 update). There is no apparent reason the New

Hampshire Supreme Court would require the duty to mitigate to be pled in a contract action but not a tort action. In light of Anglin, the New Hampshire Supreme Court is likely to hold that a defendant does not waive the duty to mitigate by failing to plead mitigation as an affirmative defense in its answer.

The issue then becomes whether federal or state law controls.[1] "Pursuant to the Supreme Court's seminal decision in Erie . . . 'federal courts sitting in diversity apply state substantive law and federal procedural law.'" Suero-Algarín v. CMT Hosp. Hima San Pablo Caguas, 957 F.3d 30, 39 (1st Cir. 2020) (quoting Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 427 (1996)). Courts use an "outcome-determination test" to discern whether a state law is procedural or substantive for Erie purposes. Id. A state law is substantive if its application would "significantly affect the result" of the case. Id. (quoting Gasperini, 518 U.S. at 427). However, this test is not applied to "'mechanically . . . sweep in all manner of variations'; rather, we apply it guided by 'the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" Id. (citation omitted) (quoting Gasperini, 518 U.S. at 427).

"[U]nder standard Erie doctrine, state pleading requirements, so far as they are concerned with the degree of detail to be alleged, are irrelevant in federal court even as to claims arising under state law." Andresen v. Diorio, 349 F.3d 8, 17 (1st Cir. 2003). The leading case as to whether state or federal law controls the extent to which the duty to mitigate must be pled in the defendant's answer is Sayre v.

[1] Neither party devotes significant argument in their briefing to the Erie issue.

Musicland Group, Inc., 850 F.2d 350 (8th Cir. 1988). The Eighth Circuit there held that federal law controlled this issue. 850 F.2d at 354. Given the purpose of the Federal Rules of Civil Procedure—"to provide uniform guidelines for all federal procedural matters, such as the pleading of affirmative defenses"—the court found "no principled reason for basing the federal procedural decision before us on state law." Id. Thus, the court held that the district court did not err by refusing to instruct the jury on mitigation of damages in light of the defendant's failure to plead mitigation in his answer.

The leading treatise on federal practice is in accord with the Eighth Circuit. "[F]ederal courts are not bound to treat a matter that is considered or specifically identified as an affirmative defense under forum state law as an affirmative defense for purposes of pleading under Rule 8(c), even in diversity of citizenship cases; the matter is governed by federal pleading principles." 5 A. Benjamin Spencer, Federal Practice & Procedure: Civil § 1271 (4th ed.). While state law is often "used by federal courts in deciding whether certain matters should be pleaded affirmatively . . . [t]hese precedents are not binding on the federal courts." Id. Federal courts are "free to decide whether a particular defensive item falls within the residuary or catchall clause in Rule 8(c) . . . without being bound by the way that matter is characterized under forum state law." Id. § 1272.

For these reasons, the court concludes that federal law controls whether the duty to mitigate is an affirmative defense which must be pled in the defendant's answer under Rule 8(c). As noted, federal law requires the duty to mitigate to be

pled in the defendant's answer. See Conjugal P'ship, 22 F.3d at 400.[2] "Generally speaking, failure to plead an affirmative defense results in a waiver of the defense and the exclusion of all evidence relevant to it." Id. The court may nevertheless allow an unpled affirmative defense (or allow the defendant to amend his answer to plead the defense) when doing so would not cause unfair prejudice. Id.

Nokia argues in the alternative that it sufficiently pled the duty to mitigate. According to Nokia, its Eleventh Affirmative Defense sufficiently raised the duty to mitigate. Nokia's Eleventh Affirmative Defense states: "Collision is barred from any recovery in this action and estopped from seeking the requested relief by its own acts, omission, [sic] and course of conduct." Doc. no. 83 at 13.

"The purpose of Rule 8(c) is to give the court and the other parties fair warning that a particular line of defense will be pursued." Williams v. Ashland Eng'g Co., Inc., 45 F.3d 588, 593 (1st Cir. 1995), abrogated on other grounds by Carpenters Local Union No. 26 v. U.S. Fid. & Guar. Co., 215 F.3d 136, 138 (1st Cir. 2000). A defendant who raises an affirmative defense using general language or "in a largely uninformative way" risks waiver of the defense. Id. "On the other hand, however, '[u]nder the liberal pleading regime prescribed by the Federal Rules of

[2] Nokia appears to suggest that the First Circuit's statement in Conjugal Partnership—characterizing the duty to mitigate as an affirmative defense which must be pled under federal procedural law—is dicta. To the extent Nokia makes this argument, Nokia is incorrect. While the court did not resolve the Erie issue in Conjugal Partnership, it did so only because both federal procedural law and the state law at issue required the duty to mitigate to be pled in the answer. See Conjugal P'ship, 22 F.3d at 400. Thus, the Circuit's characterization of the duty to mitigate as an affirmative defense which must be pled under federal law was necessary to the court's treatment of the Erie issue.

Civil Procedure, noncompliance with . . . procedural rules [such as Rule 8(c)] does not always preclude consideration of unpleaded claims or defenses.'" Onesky Litig. Tr. v. Sullivan, Civ. No. 10-cv-344-LM, 2012 WL 124739, at *4 (D.N.H. Jan. 17, 2012) (alterations in Onesky) (quoting Haseotes v. Cumberland Farms, Inc. (In re Cumberland Farms, Inc.), 284 F.3d 216, 226 (1st Cir. 2002)). "In determining whether general, non-specific language in a defendant's answer, as was used here, suffices to preserve an affirmative defense, an inquiring court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—was vindicated." Williams, 45 F.3d at 593.

Here, the parties appear to agree that the first time Nokia explicitly referenced the duty to mitigate in this litigation was in a report issued by Nokia's damages expert. See doc. no. 222 at 2 n.1; doc. no. 241 at 3-4. Collision asserts that this report was only made available to it after Collision's deadline for expert reports had passed, and Nokia does not challenge Collision's assertion. In addition, Nokia raised the duty to mitigate in its motion to exclude Collision's damages expert on Daubert grounds. See doc. no. 161 at 7 (Nokia's Daubert motion) (asserting that Collision was "obligated to mitigate its damages" once it was on notice that Nokia was not moving forward with the parties' oral agreement). The parties' Daubert litigation took place after the close of fact and expert discovery, and Collision's objection to Nokia's motion contended that Nokia could not assert the duty to mitigate because it had not been timely raised. See doc. no. 176 at 11.

The court also notes that Collision propounded an interrogatory upon Nokia requesting that Nokia explain the basis for its Eleventh Affirmative Defense. See doc. no. 223-1 at 3 (excerpts from Nokia's answers to Collision's second set of interrogatories). Nokia's answer did not put Collision on notice that Nokia interpreted its Eleventh Affirmative Defense to encompass the duty to mitigate. Rather, Nokia referred Collision to its responses to Collision's similar requests to identify the bases for its Fifth and Seventh Affirmative Defenses. See id. Nokia's Fifth Affirmative Defense states: "Collision's claims are barred, in whole or in part, by the doctrines of unclean hands and laches." Doc. no. 83 at 13. Its Seventh Affirmative Defense states: "Collision's claims are barred, in whole or in part, by the doctrines of acquiescence, waiver, and/or modification." Id. Nokia's explanation of the bases for its Fifth and Seventh Affirmative Defenses in its answer to Collision's interrogatory did not give Collision reasonable notice that Nokia intended to pursue the duty to mitigate as an affirmative defense in this case. See doc. no. 223-1 at 7-14.

Because Nokia did not raise the duty to mitigate until the late stages of this protracted litigation, Collision was prevented from taking discovery on this defense. While the court is somewhat sympathetic to Nokia's assertion that the duty to mitigate concerns Collision's own actions such that little prejudice would inure to Collision if Nokia were permitted to pursue the duty to mitigate, Nokia misconstrues the law. The duty to mitigate concerns not just the raw facts of what Collision did in response to Nokia's alleged breach, but, more importantly, whether

what Collision did or did not do to mitigate its damages was reasonable under the circumstances. See Flanagan v. Prudhomme, 138 N.H. 561, 575 (1994). Had Nokia raised the duty to mitigate prior to the close of discovery, Collision argues that it could have sought discovery from Nokia as to whether Nokia took similar post-breach actions in other contractual disputes Nokia had been involved in, which Collision could have used at trial to show that its own post-breach actions were reasonable. In addition, Collision could have deposed Nokia's witnesses regarding Collision's post-breach actions and whether such actions were consistent with standard business practices in the industry.

Where, as here, an affirmative defense is "highly fact-based," the plaintiff is more likely to be prejudiced by an untimely assertion of the defense. Air Line Pilots Ass'n, Int'l v. Pan Am. Airways Corp., No. Civ. 02-593-SM, 2004 WL 1887497, at *2 (D.N.H. Aug. 23, 2004). The fact-based nature of the duty to mitigate, as well as the time at which it can be said Collision was on fair notice of Nokia's intent to pursue this defense, distinguishes the instant case from the situation before the First Circuit in Williams. In Williams, the defendant did not plead preemption in its answer, but did assert "a broader Rule 12(b)(6) defense that was capable of encompassing preemption." Williams, 45 F.3d at 593. The defendant wrote to the plaintiffs "[w]ell before the close of discovery—and six months prior to the filing of cross-motions for summary judgment—"asserting that one of the plaintiff's claims should be dismissed under Rule 12(b)(6) because it was preempted by federal law. Id. The parties then fully briefed the preemption issue in their cross-motions for

summary judgment. Id. In these circumstances, the First Circuit found that the defendant did not waive preemption by failing to specifically raise it in its answer. Id.

Unlike the preemption defense in Williams, which was seemingly a pure question of law, here the steps Collision took or failed to take to mitigate its damages—and the reasonableness of Collision's actions—are largely questions of fact. Collision was not on reasonable notice that Nokia intended to pursue the duty to mitigate as an affirmative defense until such time that it was no longer able to seek discovery on that defense. Considering the totality of the circumstances, the court finds that the general language set forth in Nokia's Eleventh Affirmative Defense was not sufficient to put Collision on notice of Nokia's intent to raise mitigation as an affirmative defense.

However, this victory is a Pyrrhic one for Collision in many respects. While the court grants Collision's motion to the extent that Nokia will be disallowed from relying on the duty to mitigate as an affirmative defense at trial, much of the evidence that would have been relevant to a mitigation defense will likely be relevant to other issues that will be before the jury. For example, Collision agrees that the court should instruct the jury that, to recover damages, "Collision has the burden of proving that it is more probable than not that the damages it seeks were caused as a result of the legal fault of Nokia." Doc. no. 233 at 17 (Collision's proposed jury instructions). Nokia may seek to undermine any showing that it caused Collision's damages by introducing evidence that Collision's damages (or

some portion thereof) were caused by Collision's own conduct. In addition, Collision agrees that, to recover consequential damages, such damages must have been reasonably foreseeable to Nokia. See id. at 20. The extent to which Nokia could not foresee Collision's consequential damages because such damages resulted from Collision's unexpected acts and omissions is relevant to Collision's entitlement to consequential damages.

The court does not mean to limit the universe of relevant purposes for which evidence of Collision's acts and omissions would be relevant to live issues at the trial; causation and foreseeability are only given as examples. But to the extent Collision's motion seeks to exclude all evidence that could bear on a duty to mitigate defense even if such evidence is relevant to issues that will be in front of the jury, the motion is denied.[3]

## CONCLUSION

Doc. no. 222 is granted in part and denied in part. It is granted to the extent that Nokia may not rely on the affirmative defense of the duty to mitigate at trial. It

[3] As the court noted during oral argument on this motion, it is difficult for the court to understand how—in the context of this case—any evidence of a "duty to mitigate" will be distinct from the evidence bearing on the causation and reasonable foreseeability elements of damages. The court's ruling means that it will not instruct the jury on the affirmative defense of "duty to mitigate." But the court's ruling does not limit Nokia's ability to introduce evidence (or argument) that Collision's acts or omissions are the cause of Collision's damages.

is denied to the extent that it seeks exclusion of all evidence that may be relevant to the duty to mitigate regardless of its relevance to other issues at trial.

SO ORDERED.

Landya McCafferty
United States District Judge

February 9, 2024

cc: Counsel of Record